Micha Star Liberty (SBN 215687)
Leah Simmet (SBN 320096)
**LIBERTY LAW**
1970 Broadway, Suite 700
Oakland, CA 94612
Telephone: (510) 645-1000
Facsimile: (888) 645-2008
E-mail: team@libertylaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.H., a minor, by and through his *Guardian ad Litem* MARTARICE HUMPHREY, <br><br> Plaintiff, <br><br> v. <br><br> ANTIOCH UNIFIED SCHOOL DISTRICT, a public entity; CATAPULT LEARNING WEST, LLC, a limited liability company dba Sierra School of Antioch; SAMUEL MCBRIDE, an individual; JONIQUE ANDREWS, an individual; STEVE NOSANCHUK, an individual; BRUNO DIAZ, an individual; CORY MOORE, an individual; RUTH RUBALCAVA, an individual; STEPHANIE ANELLO, an individual; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. 3:18-cv-07716-WHA <br><br> **AMENDED COMPLAINT FOR DAMAGES DEMAND FOR JURY TRIAL** <br><br> 1. Violation of Constitutional Rights, 42 U.S.C. section 1983 <br> 2. Discrimination in Violation of the Americans With Disabilities Act, 42 U.S.C. section 12101 <br> 3. Discrimination in Violation of The Rehabilitation Act of 1973, 29 U.S.C. section 794 <br> 4. Negligence <br> 5. Negligent Hiring, Supervision, Or Retention of Employee <br> 6. Battery <br> 7. Discrimination in Violation of Unruh Civil Rights Act, Civil Code section 51 <br> 8. Discrimination in Violation of Education Code section 200 et seq. <br> 9. Violation of Mandatory Reporting Duty, Penal Code section 11166 <br> 10. Discrimination in Violation of the Bane Act, Civil Code section 52.1 <br> 11. Intentional Infliction of Emotional Distress <br> 12. Negligent Infliction of Emotional Distress <br><br> **[UNLIMITED CIVIL CASE]** |

COMES NOW Plaintiff K.H., a minor, ("Plaintiff") who files this amended complaint by and through his *Guardian ad Litem*, MARTARICE HUMPHREY, is informed and believes and thereon alleges as follows:

## THE PARTIES

1.      At the commencement of this action, and at all relevant times, Plaintiff was a minor resident of Contra Costa County, in the State of California. Accordingly, an Application and Order for Appointment of *Guardian Ad Litem* requesting that MARTARICE HUMPHREY ("Mr. Humphrey"), Plaintiff's father, be appointed as his *Guardian ad Litem* in the United States District Court, Northern District of California was filed contemporaneously with this lawsuit. To protect his privacy Plaintiff has been identified herein as "K.H."

2.      At the time of the incident giving rise to this action, Plaintiff was a special education student entrusted to the care of Defendants ANTIOCH UNIFIED SCHOOL DISTRICT ("AUSD" or "District") and Defendant CATAPULT LEARNING WEST, LLC ("CATAPULT") at Sierra School of Antioch-Fremont ("Sierra School").

3.      Defendant AUSD is a public entity within the meaning of California Government Code sections 811.2, 900 *et seq*. and is duly incorporated and operating under California law as a school district. The state of California apportions funds to AUSD pursuant to Local Control Funding Formula ("LCFF"). Although the balance between sources fluctuates slightly from year to year, the federal government provides approximately 10 percent of this funding.  LCFF funds are not apportioned by source.  The state disburses additional categorical funds for Special Education using primarily a "census–based" method that allocates money to local consortia of schools and districts based on their total student population.

4.      The local control funding formula (LCFF) was enacted in 2013–14, and it replaced the previous kindergarten through grade twelve (K–12) finance system which had been in existence for roughly forty years.  Under the LCFF California has vested control of school funding in the local rather than state governments. School-related spending is carried out by AUSD.  AUSD makes decisions about how schools and classrooms will operate and utilize resources.  LCFF funds are

technically "unrestricted" which means AUSD had discretion over how they are used.

5.      Defendant CATAPULT is a provider of K–12 contracted instructional services to public and private schools in the United States.  Founded in 1976 under the name READS as an educational services business for private and religious schools, in 2008 CATAPULT was sold to private investors, making CATAPULT a private, independent for-profit limited-liability company with an estimated annual revenue of $38.1 million dollars. At all times herein mentioned, CATAPULT was in contract with AUSD to provide K-12 instructional services as Sierra School of Antioch. Sierra School staff are comprised of both District and CATAPULT employees and is housed within AUSD facilities. Sierra School claims that it is dedicated to serving students who have not experienced success in traditional academic settings due to learning, language, and social challenges that require special attention. CATAPULT holds itself out as an organization with expertise in educating and caring for special education students that can be leveraged by public school systems to enhance services offered for at-risk students. CATAPULT generates revenue by providing this expertise as a service to school districts including AUSD for a profit.  CATAPULT markets itself to school districts and advertises that its "programs assist district leaders to remain compliant with federal government requirements."

6.      Plaintiff alleges that Defendants AUSD, CATAPULT, and/or DOES 1 through 10 at all relevant times herein mentioned controlled, directed, managed, operated and/or owned Sierra School. By contracting with CATAPULT to provide educational services "complaint with federal government requirements" on AUSD facilities, AUSD, and through it the state, has so far insinuated itself into a position of interdependence with CATAPULT that it must be recognized as a joint participant in the challenged activity, which on that account, cannot be considered to have been so "purely private" as to fall outside the scope of the Fourteenth Amendment. *See Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961).

7.      At all relevant times, Defendant SAMUEL MCBRIDE ("MCBRIDE") was employed as a teacher aide by AUSD, CATAPULT, and/or DOES 1 through 10, at Sierra School. All actions alleged herein by MCBRIDE were taken under color of state law and in course and scope of his employment with AUSD, CATAPULT, and/or DOES 1 through 10.

8.     At all relevant times, Defendant JONIQUE ANDREWS ("ANDREWS") was employed as a teacher by AUSD, CATAPULT, and/or DOES 1 through 10, at Sierra School. All actions alleged herein by ANDREWS were taken under the color of state law and in course and scope of his employment with AUSD, CATAPULT, and/or DOES 1 through 10.

9.     At all relevant times, Defendant STEVE NOSANCHUK ("NOSANCHUK") was employed as a teacher by AUSD, CATAPULT, and/or DOES 1 through 10, at Sierra School. All actions alleged herein by NOSANCHUK were taken under the color of state law and in course and scope of his employment with AUSD, CATAPULT, and/or DOES 1 through 10.

10.     At all relevant times, Defendant BRUNO DIAZ ("DIAZ") was employed as Director of Sierra School by AUSD, CATAPULT, and/or DOES 1 through 10. Plaintiff alleges that DIAZ was responsible for the hiring, training, and supervision of Sierra School staff, including the training, supervision, and control of Defendants MCBRIDE and ANDREWS. Additionally, Plaintiff alleges that DIAZ was responsible for ensuring compliance with state and federal laws pertaining to behavior interventions, supervision, and training.  Finally, all actions alleged herein by DIAZ were taken under color of state law and in course and scope of his employment with AUSD, CATAPULT, and/or DOES 1 through 10.

11.     Defendant CORY MOORE ("MOORE"), at all times mentioned herein, was employed as the Administrator of Sierra School by AUSD, CATAPULT, and/or DOES 1 through 10. Plaintiff alleges that MOORE was responsible for the hiring, training, and supervision of Sierra School staff, including the training, supervision, and control of Defendants MCBRIDE and ANDREWS. Additionally, Plaintiff alleges that MOORE was responsible for ensuring compliance with state and federal laws pertaining to behavior interventions, supervision, and training. Finally, all actions alleged herein by MOORE were taken under color of state law and in course and scope of his employment with AUSD, CATAPULT, and/or DOES 1 through 10.

12.     Plaintiff alleges that Defendant RUTH RUBALCAVA ("RUBALCAVA"), was employed by AUSD, CATAPULT, and/or DOES 1 through 10, as the Director of Special Education for AUSD. In this role, RUBALCAVA was responsible for providing training and support to District and school site personnel, including the training, supervision, and control of Defendants MCBRIDE

- 4 -

and ANDREWS, and to assist them in their efforts in complying with legal requirements pertaining to pupil services. All actions alleged herein by RUBALCAVA were taken under color of state law and in course and scope of her employment with AUSD, CATAPULT, and/or DOES 1 through 10.

13.     Defendant STEPHANIE ANELLO ("ANELLO"), at all times herein mentioned, was employed by AUSD, CATAPULT, and/or DOES 1 through 10, as the Superintendent of AUSD. Plaintiff alleges that ANELLO was responsible for the hiring, training, and supervision of District staff, including the training, supervision, and control of Defendants MCBRIDE and ANDREWS. On information and belief, ANELLO was also responsible for ensuring compliance with state and federal laws pertaining to behavior interventions, supervision, and training. All actions alleged herein by ANELLO were taken under color of state law and in the course and scope of her employment with AUSD, CATAPULT and/or DOES 1 through 10.

14.     Plaintiff alleges that at all relevant times, DOES 11 through 21 were the employees, agents, officers and/or directors of Defendant AUSD and were acting within the course and scope of their employment with AUSD or in an official capacity. Pursuant to California Government Code sections 815.2 and 820, AUSD is liable for the acts and omissions of its employees that are within the course and scope of employment. *Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747.

15.     Plaintiff further alleges that DOES 22 through 32 were the employees, agents, officers and/or directors of Defendant CATAPULT and were acting within the course and scope of their employment with CATAPULT or in an official capacity. Pursuant the well-established legal principal of *respondeat superior*, CATAPULT is vicariously liable for the torts of its employees that are committed within the scope of their employment. *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967.

16.     Plaintiff additionally alleges that at all relevant times, DOES 33 through 43 were the employees, agents, officers and/or directors of DOE Defendants 1 through 10 and were acting within the course and scope of their employment with DOES 1 through 10 or in an official capacity. Pursuant the well-established legal principal of *respondeat superior*, DOES 1 through 10 are vicariously liable for the torts of their employees that are committed within the scope of their employment. *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967.

17.    The true names and capacities, whether individual, corporate, partnership, joint venture, or otherwise of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiff who therefore sues Defendants by such fictitious names. When the true names and capacities of DOES 1 through 50 are ascertained, Plaintiff will seek leave to amend this complaint by inserting their true names and capacities herein.

18.    Plaintiff alleges that each of the named Defendants and each of the fictitiously named Defendants are legally responsible in some manner for the occurrences alleged herein, and that the injuries as alleged herein were proximately and legally caused by the acts and/or omissions of such Defendants.

19.    Plaintiff alleges that during the relevant times referenced herein, that each of the Defendants sued herein was the agent, servant, employee, joint venture, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants, and was acting within the purpose, scope, course, and authority of such agency, servitude, employment, joint venture, partnership, division, ownership, subsidiary, alias, assignment, alter-ego, and with the authority, consent, approval, and ratification of each remaining Defendant.

## JURISDICTION AND VENUE

20.    This court has original jurisdiction over Plaintiff's claims for relief pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).  This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

21.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because (a) the public entity Defendant has its principal place of business in its jurisdictional area, (b) Defendant CATAPULT does business in its jurisdictional area, (c) Plaintiff and the remaining named Defendants reside and/or work in its jurisdictional area, and (d) because the obligations and liabilities of all Defendants and/or DOES 1 through 50, inclusive, arise therein.

22.    Plaintiff alleges, pursuant to the California Government Code, including but not limited to sections 820 et seq., 830 et seq., and 840 et seq., that Defendant AUSD and DOES 1 through 50 are liable to them in tort for monetary damages for personal injuries as a result of the incident

AMENDED COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

which occurred at Sierra School, located in the County of Contra Costa, State of California, on or about December 12, 2017.

## COMPLIANCE WITH GOVERNMENT CLAIMS ACT
## FILING PREREQUISITES

23.     On or about June 8, 2018, Plaintiff presented a written government claim to Defendant AUSD for the injuries, losses, and damages that he suffered because of the occurrences described herein, pursuant to Government Code sections 900 through 915.4.

24.     On July 5, 2018, AUSD notified Plaintiff that his claim had been rejected by AUSD on June 27, 2018.

25.     Accordingly, this action is timely filed in conformity with the period provided by the California Government Code sections 900 through 915.4 and Plaintiff has complied with the Government Claims Act filing prerequisites.

## FACTS COMMON TO ALL COUNTS

26.     At the time of the incident giving rise to this action, Plaintiff was a fourteen-your-old boy with Attention Deficit Hyperactivity Disorder/Attention Deficit Disorder ("ADHD/ADD"), other health impairments (OHI), and a special learning disability ("SLD"). As a result of these conditions, Plaintiff is and was unable to successfully participate in general education programs and was therefore made eligible for special education services and supports pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. sections 1401 et seq.

27.     In or around January of 2014, Plaintiff was enrolled into Defendant AUSD's special education program in order for him to receive the additional care and support needed to succeed in school. Upon admission into the program, AUSD placed Plaintiff at Sierra School, a private school specialized in providing k-12 educational services to special education students. Based on the additional needs that were known by AUSD and CATAPULT, Plaintiff was placed in the Special Day Class (SDC) for one-hundred percent inclusion in the special education program.

///

AMENDED COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

**Plaintiff Was Seriously Injured When Staff Slammed Him To The
Ground In Response To Disability-Related Behaviors**

28.     As a result of Plaintiff's inclusion in the special education program at Sierra School, Defendants developed a Behavior Intervention Plan (BIP) and an Individualized Education Program (IEP) to address his unique educational needs and to maximize his opportunity for success by teaching new problem-solving skills and positive intervention strategies to better manage his known disability-related behaviors, which included becoming distracted or agitated by other students.

29.     In or around November of 2017, Defendants identified numerous positive interventions in Plaintiff's BIP for responding to his disability-related behaviors, which included encouraging Plaintiff to "taking breaks" and to "practice self-calming techniques." When Plaintiff became particularly agitated, he was permitted to remove himself from the classroom in order to calm down. None of the interventions or strategies developed and supposedly implemented by Defendants authorized Sierra School staff to use any kind of physical force, touching, or restraint.

30.     On or about December 12, 2017, between approximately 11:00 a.m. and 12:00 p.m., Plaintiff requested and received permission from his teacher to leave his classroom so that he could remove himself from another student who was bothering him and implement the calming techniques that were part of his positive behavior intervention training.

31.     Shortly thereafter, Defendant MCBRIDE, a teacher aide at Sierra School, saw Plaintiff outside of his classroom. Disregarding the fact that Sierra School encouraged Plaintiff to take breaks outside of his classroom, and without asking Plaintiff any questions about what he was doing or where he was going, Defendant MCBRIDE, approached Plaintiff, roughly grabbed him by his shirt, and pulled him back in the direction of his classroom. At about this time, Defendant MCBRIDE asked a nearby teacher, Defendant ANDREWS, to help him get Plaintiff back in his classroom. Defendant ANDREWS then approached Plaintiff, grabbed him by the wrist, and forcibly placed his arm behind his back. Defendant MCBRIDE then proceeded to take hold of Plaintiff's other wrist, forcing Plaintiff's free arm behind his back. Defendant ANDREWS then used one of his hands to grab the back of Plaintiff's neck. Having fully restrained Plaintiff, Defendant MCBRIDE, a two-hundred-and-twenty-pound gown man, and Defendant ANDREWS, a two-hundred-and-forty-pound grown man,

1   forcefully marched Plaintiff back to class.

2       32.     While being escorted back to his classroom, Plaintiff felt discomfort from the pressure

3   that Defendant ANDREWS was applying to the back of his neck. Not understanding why he was

4   being restrained in the first place, Plaintiff asked Defendant ANDREWS to "let go of his neck."

5   Without empathy for Plaintiff, Defendant ANDREWS coldly laughed as if to mock Plaintiff for his

6   reasonable request.

7       33.     Once back in the classroom, Defendants MCBRIDE and ANDREWS briefly released

8   their holds on Plaintiff. At about this time, Plaintiff said something to the effect of "let go of me" or

9   "get off me." In a completely disproportionate and unlawful response, Defendants MCBRIDE and

10  ANDREWS slammed Plaintiff to the ground causing his head to crash into a desk before hitting the

11  floor. ANDREWS and MCBRIDE then placed Plaintiff in a "two-person pro-act prone restraint."

12  This type of restraint involves two or more staff members holding a student face down on the floor

13  while immobilizing all four limbs and is considered extremely dangerous by the U.S. Department of

14  Education. Due to the increased risk of serious injury, or even death, the U.S. Department of

15  Education recommends that this type of restraint not be used under any circumstance[1].

16      34.     Upon being forcefully slammed to the ground by two grown men, Plaintiff's head and

17  face struck the floor. A metal strip on the floor left a gash under Plaintiff's eye, which is permanently

18  scarred. The force used in implementing the two-person pro-act restraint additionally left Plaintiff

19  with a split lip and bleeding gums. Despite immediately noticing that Plaintiff had sustained

20  significant injuries to his face from their unprovoked and excessive use of force, Defendants failed to

21  provide or offer medical attention, call Plaintiff's parents, or report the incident to the proper

22  authorities, as they were legally required to do. Instead, Defendants required Plaintiff to return to his

23  seat to finish out the remainder of the school day, disregarding both Plaintiff's visible injuries as well

24  as the possibility of serious internal injuries that could and did result from slamming his head to the

25  ground.

26  _____

27  [1] In a prone restraint, which is considered the most dangerous technique used on students, two or more staff members
    hold a student face down on the floor with all four of the student's limbs immobilized. Prone (i.e. lying face down)
    restraints or other restraints that restrict breathing should never be used because they can cause serious injury or death.
28  (U.S. Department of Education Restraint and Seclusion: Resource Document May 2012
    http://www.2.ed.gov/policy/seclusion/restraints-andsexlusion-resources.pdf)

35.     At the relevant times hereto, Plaintiff's behavior did not rise to the level of an emergency of serious or imminent threat of harm to himself or others that would justify using physical force against him or restraining his freedom of movement.

### Defendants Dismissed The Severity Of Their Conduct And Failed To Report The Incident As They Were Legally Required To Do

36.     Later that same day, at around 2:30 p.m., Plaintiff was picked up from Sierra School by his father, as was their daily routine. Upon seeing the injury to K.H.'s face, Plaintiff's father immediately asked K.H.'s teacher, Defendant NOSANCHUK, what had happened and why he had not been contacted. NOSANCHUK appeared flustered and in an effort to make Plaintiff's father believe that there had not been enough time to contact the parents, he falsely told Plaintiff's father that the incident had "just happened."

37.     At about this time, Plaintiff's mother arrived at the school and Plaintiff's parents then located the Director of Sierra School, Defendant DIAZ, to inquire about the assault. First, K.H.'s parents requested to speak with the staff members involved but were told that everyone involved in the incident had already left for the day. Next, Plaintiff's parents asked if there was a report available so that they could understand what had happened that day. Defendant DIAZ informed them that a report had yet to be completed.

38.     Greatly concerned by the fact that their son had been assaulted by staff at Sierra School, Plaintiff's parents filed a Request for Assistance with AUSD which contained allegations regarding the assault and battery.  The complaint additionally noted that Plaintiff's parents further had not been timely or properly notified of the incident or of Plaintiff's injuries, which were caused by AUSD, CATAPULT, and their respective employees. Further, in dismissing the disproportionate and unlawful use of force against Plaintiff, AUSD, CATAPULT and their respective employees failed to report the incident to the police as they were required to do by mandatory reporting statutes.

39.     That evening, Plaintiff's parents reported the incident to the Antioch Police Department ("APD") and an investigation was conducted. The APD observed Plaintiff's physical injuries and reported that there "was an obvious sign of visible injury located underneath his left eye," and that "[Plaintiff had] a red scrape mark underneath his left eye." After conducting numerous

- 10 -

interviews of Plaintiff and District and Sierra School employees, the APD recommended that the District attorney file misdemeanor charges against MCBRIDE and ANDREWS.

### Plaintiff Was Taken To The Hospital For Medical Treatment After Continuing To Feel Pain Into The Following Day

40.     On or about December 13, 2017, appearing disoriented and continuing to complain of head pain, Plaintiff was taken to the hospital by his parents where he was diagnosed with a Concussion.

41.     Approximately two weeks later, Plaintiff was taken to the doctor for a follow-up visit. The bruising on Plaintiff's face had not improved and Plaintiff's parents were informed that this was due to the fact K.H. had suffered a deep tissue bruise which would take longer to heal.

42.     The long-term effects of the delayed treatment resulting from Defendants conscious disregard for Plaintiff's well-being are unknown.

### Plaintiff's Parents Reasonably Requested That He Be Placed At Another School Because Plaintiff Was Emotionally Traumatized By The Assault And Terrified Of Returning To Sierra School

43.     Following the assault, Plaintiff's parents noticed an immediate change in his demeanor. Plaintiff became withdrawn and experienced significant fear and anxiety triggered by thoughts of returning to Sierra School. Plaintiff expressed that he felt unsafe returning to school because he had been traumatized by the very staff that were supposed to support and protect him.

44.     Having lost confidence in the ability of Sierra School staff to supervise and care for special education students, including Plaintiff, and fearing further abuse, Plaintiff's parents requested that AUSD provide an alternative placement and that it allow for independent study until a spot at another school was identified and approved. In the meantime, Plaintiff's parents allowed him to stay home from school so that he would not be re-traumatized by returning to Sierra School.

45.     The request that Plaintiff's placement be changed was reasonably made so that Plaintiff could feel safe at school and so that his parents would not have to worry about Plaintiff being abused by Sierra School's aggressive and apparently untrained staff. Without compassion for the trauma that Plaintiff experienced, AUSD unilaterally and without a proper basis concluded that Sierra School was an appropriate placement and flatly denied both the request for a change in Plaintiff's

placement as well as the request for independent study.

46.    On or about December 21, 2017, after not having received a response from AUSD, Plaintiff's parents submitted a second Request for Assistance form to AUSD hoping that the District would investigate K.H.'s assault and take measures to ensure a safe learning environment for him. As with the first Request for Assistance, no response was ever received from the District.

47.    In or around January of 2018, following the winter break, Plaintiff's parents began picking-up the curriculum packets that were taught in K.H.'s classroom at Sierra School in order to prevent him from falling behind in his studies while their safety concerns were being resolved. Although Plaintiff's parents wanted him to return to school as soon as possible, they also needed to protect his well-being and safety.

48.    On or about January 16, 2018, after failing to receive any sort of response from the District, Plaintiff's mother contacted AUSD Superintendent, Defendant ANELLO, in order to follow up. Upon requesting the status of AUSD's investigation into her son's assault, Plaintiff's mother was informed that the District had not begun any investigation into the incident. Despite having received at least two written complaints, ANELLO attempted to defend the District's inaction by putting the blame on Plaintiff's parents for purportedly not having completed the "proper" complaint form, which they had never been given or advised about. In response, Plaintiff's mother expressed deep concern at the fact that a complaint of this gravity would be ignored, simply for not using a specific form. Plaintiff's mother further expressed that the District could and should have informed her that a different form was required, rather than continuing to obstruct Plaintiff's access to education by preventing him and the District from investigating the assault and identifying appropriate actions that would allow Plaintiff to feel safe at school. Hoping to find a solution, Plaintiff's mother completed and submitted the "proper" Uniform Complaint Form to AUSD.

### Defendants "Investigation" Lacked A Clearly Defined Scope And Was Biased Against Plaintiff Because Of His Disability

49.    In or around February 2018, after admitting to Plaintiff's mother that no investigation had taken place, AUSD retained the services a private law firm to investigate the allegation that Plaintiff had been physically assaulted by Sierra School staff. Significantly, compliance with District

policies was not evaluated.

50.    AUSD's one-sided investigation unsurprisingly determined that "no assault" has taken place. In an effort to justify its conclusion the District cherry-picked snippets of California Educational Code sections 49001 and 56521.1, claiming that the use of "force" or "emergency interventions" was authorized in order to subdue a clear and present threat of injury. A full reading of these sections however provides that the use of "force" or "emergency interventions" is a last resort that should never use more force than reasonably necessary under the circumstances. Here, none of the facts offered by the District demonstrate the existence of a clear and present danger sufficient to warrant the type and amount of force used against Plaintiff. At the time of the assault, Plaintiff was displaying the disability-related behaviors that Sierra School staff were purportedly well trained in deescalating. Plaintiff was a fourteen-year-old boy without a history of physical violence. ANDREWS and MCBRIDE were two adult males, each over 200 pounds. The District's claim that the use of the two-person pro-act prone restraint was warranted by the circumstances defies logic and places the blame for their unlawful conduct on Plaintiff's disability.

51.    Defendants additionally conducted a biased investigation based primarily based on interviews and statements of Sierra School staff. At no time were Plaintiff or his parents interviewed. At no point were inconsistencies in staff statements questioned. At no point was the fact that ANDREWS and MCBRIDE were two grown men and that Plaintiff was a young boy without a history of physical violence considered. Further, while California Education Code section 49001 does allow for reasonable force to be used when there is an imminent threat of danger, it explicitly states that no person employed by or engaged in a public school shall willfully inflict pain on a pupil. The conclusions of the investigation are therefore unfounded as (a) Plaintiff posed no serious threat of harm to himself or others, (b) the amount of force used by Defendants was wholly unreasonable, and (c) pain was willfully inflicted on Plaintiff despite his pleas for Defendants to stop.

52.    In or around February 2018, more than two months after first complaining to the District about the incident, Plaintiff's parents received a letter from AUSD's Director of Special Education, Defendant RUBACLAVA, which contained the "findings" of the investigation and confirmed that because there had purportedly been no assault, that no corrective actions would be

- 13 -

taken, and no additional protection would be provided to make sure that Plaintiff was in a safe learning environment. With ANDREWS and MCBRIDE still working at Sierra School, and the school's custom and practice of excusing physical violence by blaming a child's disability-related behaviors, Plaintiff's parents were forced to keep him from returning to Sierra School because they did not feel that his safety or best interests were of any concern to the school or District. Moreover, Plaintiff was traumatized by the assault and feared returning to Sierra School where, without any changes, he could easily be victimized again.

**Defendants Continue To Deny Plaintiff Access To Free And Equal
Educational And Have Retaliated Against Plaintiff And
Attempted To Interfere With His Civil Rights In Order To Be
Released From Liability Resulting From The Assault**

53.     In or around February 2018, despite continuous engagement with AUSD to find a solution that would allow Plaintiff to return to school, Plaintiff's parents received a truancy letter from the District threatening fines and even jail time if Plaintiff's attendance did not improve.

54.     On or about February 26, 2018, a truancy meeting was held between AUSD and Plaintiff's father. There, he made it clear that Plaintiff's parents were eager for Plaintiff to return to school and that it was the District and Sierra School's failure to consider meaningful solutions to ensure Plaintiff's safety, including an alternative placement, that were causing his prolonged absence. Three alternative placement options were raised by Plaintiff's parents; however, Defendants summarily rejected each option with unsubstantiated and conclusory statements like, "Plaintiff is not a good fit." Defendants further attempted to leverage the concern that Plaintiff's parents had for his safety in order to protect their own interests by conditioning the possibility of alternative placement on the acceptance of a full and complete release of liability arising from the December 12, 2017 physical assault of their son.

55.     Following the February 26, 2018 meeting, knowing that Plaintiff's parents desired that he return to school as soon as possible, Defendants sent a "Compromise and Release Agreement" that agreed to a change of placement on the condition that Plaintiff waive all his civil and constitutional rights related to the assault and in so doing, absolve Sierra School and the District of any and all liability. Essentially, Defendants would be permitted to deny any wrongdoing and to continue to

engage in the kind of pattern of conduct that created an unsafe environment at Sierra School. Because Plaintiff's parents believed that the "Compromise and Release Agreement" would remove any incentive on behalf of the District to prevent the future abuse of its students, including K.H., the agreement was never signed.

56.     In or around June 2018, Plaintiff received a report card from Sierra School with grades that were significantly lower than previous report cards. The grades did not make sense to Plaintiff's parents because since the return from winter break, Plaintiff had completed and returned his weekly curriculum packets to Sierra School via hand delivery by Plaintiff's father. When Plaintiff's father inquired about the report card, he was falsely told that only two curriculum packets had been received. Later, when Plaintiff's father went to the Sierra School administrative office to ask about the missing packets the office assistant admitted that the missing packets had in fact been submitted. The "misplacement" of the packets and inability to provide Plaintiff with an accurate report card further demonstrates that Defendants were indifferent Plaintiff's access to educational services.

57.     In the following months, Defendants unlawfully continued and at the time of filing this Complaint continue to interfere with Plaintiff's civil liberties, including his access to legal representation.

58.     As a result of his physical assault, Plaintiff has and continues to suffer from increased anxiety, fear, depression and disruptive disability-related behaviors. Because Plaintiff was terrified of returning to Sierra School, a reasonable request for an alternative placement or independent study was made to AUSD. The request was first denied and later conditioned on Plaintiff relinquishing his constitutional rights to seek redress for his injuries. Having been unreasonably denied an alternative placement, Plaintiff returned to school in February of 2019. Defendants' refusal to take any measures that would ensure Plaintiff's safety while allowing him to continue his studies has deprived him of a free and equal school-based education that he is entitled to.

## FIRST CAUSE OF ACTION
### Violation of Constitutional Rights, 42 U.S.C. section 1983
### (Against Defendants CATAPULT, MCBRIDE, ANDREWS, DIAZ, MOORE, RUBALCAVA, ANELLO, and DOES 1 through 50)

59.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though

fully set forth herein.

60.    Plaintiff alleges that Defendants CATAPULT, MCBRIDE, ANDREWS, DIAZ, MOORE, RUBALCAVA, ANELLO and DOES 1 through 50 violated 42 U.S.C. section 1983 when they deprived him of his constitutional rights while acting under the color of state law. *Gomez v. Toledo* (1980) 446 U.S. 635, 640.

61.    Plaintiff has a constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and to be secure in his person and to maintain his bodily integrity against unreasonable assaults of his person. All public-school students have the right under the Fourth Amendment to be free from unreasonable searches and seizures. The unreasonable use of excessive force and corporal punishment of a student violates this right. *Doe ex rel. Doe v. Hawaii Dept. of Education* (9th Cir. 2003) 334 F.3d 906, 909. Further, Plaintiff alleges a Fourteenth Amendment right to life, liberty, and property free from interference, without due process of law. U.S. Const. Amendment XIV, sec. 1.  The constitutional right of a child "to be free from, and to obtain judicial relief for, unjustified intrusions on personal security" was clearly established prior to the incidents giving rise to this litigation.

62.    MCBRIDE and ANDREWS violated K.H.'s rights under the Fourth Amendment and Fourteenth Amendment by using unjustified and unreasonable force against him.

63.    MCBRIDE and ANDREWS' conduct in physically seizing K.H. unlawfully subjected him to excessive, unreasonable, and unnecessary physical force.

64.    In light of the clear constitutional prohibition of excessive physical abuse of schoolchildren, and the heightened protections for disabled pupils, no reasonable special education teacher would believe that the use of force employed by MCBRIDE and ANDREWS was lawful.

### Supervisory Liability – School Officials & CATAPULT

65.    Plaintiff alleges that Defendants DIAZ, MOORE, RUBALCAVA, ANELLO, and DOES 1 through 50, are individually liable under § 1983 for their inaction in the training, supervision, and control of Defendants MCBRIDE and ANDREWS.

66.    On information and belief, Defendants DIAZ, MOORE, RUBALCAVA, ANELLO, and DOES 1 through 50, ratified a custom that subjected K.H. to an educational environment in which

he was physically and emotionally abused, in part by failing to train special education teachers and aides, or to hire qualified individuals to work in special education classrooms.

67.     On information and belief, MCBRIDE and/or ANDREWS had previously used excessive, unreasonable, and unnecessary physical force to seize other disabled students on several different occasions and Defendants DIAZ, MOORE, RUBALCAVA, ANELLO, and DOES 1 through 50, had actual or constructive knowledge that MCBRIDE and/or ANDREWS had previously engaged in and continued to engage in conduct that posed a pervasive and unreasonable future risk of constitutional injury to students like K.H.  Defendants DIAZ, MOORE, RUBALCAVA, ANELLO, and DOES 1 through 50, response to that knowledge was so inadequate that it showed deliberate indifference to or tacit authorization of the constitutional violations.  K.H. further alleges that Defendants DIAZ, MOORE, RUBALCAVA, ANELLO, and DOES 1 through 50, abdicated their duty to report and discipline MCBRIDE and/or ANDREWS when they first became actually or constructively aware of the alleged abuses.

68.     Plaintiff alleges that there is here an affirmative causal link between the inaction of Defendants DIAZ, MOORE, RUBALCAVA, ANELLO, and DOES 1 through 50, as the particular constitutional injury suffered by Plaintiff K.H. is a natural consequence of the "blind eye" acquiescence and failure to report and discipline prior abuses committed by MCBRIDE and/or ANDREWS in that the former made the later more likely.

69.     The acts and omissions on the part of Defendants DIAZ, MOORE, RUBALCAVA, ANELLO, and DOES 1 through 50, establish that they are liable for the violation of K.H.'s clearly established constitutional rights because they demonstrated disregard of their responsibilities in hiring, training, supervising, disciplining and reporting abuses committed by MCBRIDE and/or ANDREWS.  The physical abuse allegations here do not concern IDEA violations. A reasonable special education school official would know that MCBRIDE and/or ANDREWS' conduct, and the failure of supervisors to address that conduct, are grounds for liability.

70.     Plaintiff alleges that Defendant CATAPULT personally participated in the deprivation of Plaintiff's constitutional rights by failing to train, discipline, and supervise ANDREWS, MCBRIDE, DIAZ, MOORE, RUBALCAVA, ANELLO, and DOES 1 through 50.

There is clear constitutional duty implicated in the restraint of disabled students which is a recurrent situation that CATAPULT employees confront on a regular basis. CATAPULT's failure to inform and train its employees of that duty creates an extremely high risk that constitutional violations will occur. On information and belief, CATAPULT has actual knowledge its employees confront the particular situation on a regular basis, and that they often react in a manner contrary to constitutional requirements. CATAPULT nonetheless fails to maintain adequate policies and conduct adequate training to prevent violations of the constitutional rights of students. The training program it provides is inadequate in relation to the tasks its employees are expected to perform, the need for more and different training was obvious, and inadequate training so likely to result in the use of excessive force and the failure to report the same, that CATAPULT, and DOES 1 through 50 were deliberately indifferent to the need for more and different training.

71.     On information and belief, CATAPULT has a permanent and well-settled practice of downplaying the abuse of special education students, exaggerating their behaviors in attempt to justify the abuse and unconstitutional restraint, failing to investigate abuse and unconstitutional restraint, failing to report abuse and unconstitutional restraint as required by law, and failing discipline the perpetrators when abuse and unconstitutional restraint comes to light. These practices facilitated the constitutional violation in this case as the practice normalizes recurrent constitutional deprivations and encourages future violations. CATAPULT's knowledge that constitutional violations were regularly occurring and corresponding failure to take affirmative action to prevent future abuses constitutes deliberate indifference.

72.     The relationship between CATAPULT and the state are sufficiently close such that CATAPULT was acting under the color of state law.  On information and belief, CATAPULT was hired to assist state entity to remain compliant with federal government requirements. The acts complained of were contemplated by this contract and between AUSD and CATAPULT which establishes an interdependent relationship between the state and the private company and establishes significant state involvement in the constitutional violations.

73.     As set forth in this Complaint, Defendants' conduct was a substantial factor in causing Plaintiff's harm.

74.     As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

75.     As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

76.     As a direct, proximate, and foreseeable result of Defendants' conduct, Plaintiff was forced to retain an attorney in order to protect his rights.  Accordingly, Plaintiff seeks reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under 42 U.S.C. section 1988(b).

77.     Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice. Alternatively, said Defendants' despicable conduct was carried out in conscious disregard of Plaintiff's rights. As a result, Plaintiff is entitled to punitive damages against all non-public entity Defendants.

## SECOND CAUSE OF ACTION
### Discrimination in Violation of the Americans With Disabilities Act, U.S.C. section 12131, et seq.
### (Against Defendant AUSD)

78.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

79.     Congress enacted the Americans with Disabilities Act ("ADA") upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination." 42 U.S.C. section 12101(a).

80.     In response to these findings, Congress explicitly stated that the purpose of the ADA

is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. section 12101(b)(1).

81.    Effective January 26, 1992, Title II of the Americans with Disabilities Act of 1990, entitled Plaintiff to the protections of the "Public Services" provision. Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 U.S.C. section 12131, section 201 of the ADA.

82.    Pursuant to 42 U.S.C. section 12132, section 202 of Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

83.    At all times relevant to this action, Plaintiff was a qualified individual with a disability. Further, AUSD is a public entity within the meaning of Title II of the ADA and provides a program, service, or activity to the general public. 42 U.S.C. section 12115, section 201.

84.    Plaintiff alleges that AUSD denied him the benefits of access to their educational program when they subjected him to physical abuse causing him to fear returning to school and when they denied him a reasonable alternative placement.

85.    Additionally, AUSD failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons, including failing to ensure that educational services are provided on an equal basis to children with disabilities and free of hostility toward their disability.

86.    As set forth in this Complaint, AUSD further failed in its responsibilities under Title II to provide its services, programs, and activities in a full and equal manner to disabled persons.

87.    Plaintiff alleges that ANDREWS and MCBRIDE unconstitutionally seized Plaintiff because of his disability and in response to behaviors related to his disability.  On information and belief, ANDREWS and MCBRIDE justified their misconduct both during and after the unconstitutional seizure on the fact that K.H. had a disability and was exhibiting symptoms related to his disability.  Non-disabled children were not subjected to similar acts of abuse.  ANDREWS and MCBRIDE were also deliberately indifferent to the risk that their actions would deprive K.H. of equal

and meaningful access to education and exacerbate behaviors related to his disability.

88.     Plaintiff further alleges that ANDREWS, ANELLO, DIAZ, MCBRIDE, MOORE, NOSANCHUK, RUBALCAVA and DOES 1 through 50, were deliberately indifferent to abuse committed by ANDREWS and MCBRIDE because the victims of their abuse, including Plaintiff, were persons with a disability.

89.     The deliberate indifference by employees of AUSD gives rise to liability under the well-established legal principal of *respondeat superior*. *Duvall v. County of Kitsup*, 260 F.3d 1124 (9th Cir. 2001), makes abundantly clear that when a plaintiff brings a direct suit under the ADA or the Rehabilitation Act, a public entity is liable in *respondeat superior* for the acts of its employees.

90.     Defendants' conduct as alleged herein, was a substantial factor in causing Plaintiff's harm.

91.     As a direct, proximate, and foreseeable result of AUSD's failure to comply with their duty under Title II, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

92.     As a direct, proximate, and foreseeable result of Defendant's conduct, Plaintiff was forced to retain an attorney in order to protect his rights.  Accordingly, Plaintiff seeks reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under 42 U.S.C. section 12205.

**THIRD CAUSE OF ACTION**
**Discrimination in Violation of the Rehabilitation Act of 1973,**
**29 U.S.C. section 794**
**(Against Defendant AUSD)**

93.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

94.     Under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794 ("Section 504"), a qualified individual with a disability may not, solely by reason of his/her disability, be subjected to discrimination, excluded from participation in, or denied the benefits of, any program or activity receiving Federal financial assistance. 29 U.S.C. section 794(a). As such Section 504

prohibits not only "discrimination" against the disabled, but also "exclu[sion] from . . . participation in" and "deni[al] [of] the benefits of" state programs solely by reason of a disability. Furthermore, although Section 504's provisions are not expressly affirmative in nature, the regulations adopted pursuant to Section 504 require qualifying public schools to affirmatively "provide a free appropriate public education to each qualified handicapped person." 34 C.F.R. section 104.33(a).  Under those Section 504 regulations, a "free appropriate public education" requires "regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met." 34 C.F.R. section 104.33(b)(1) (emphasis supplied). Section 504's regulations gauge the adequacy of services provided to disabled individuals by comparing them to the level of services provided to individuals who are not disabled.  When a handicapped individual is removed from a regular environment, the facility in which she is placed must still be "comparable" to that used by non-disabled students. 34 C.F.R. section 104.34(c).

95.     Plaintiff is informed and believes and thereon allege that AUSD is and has been at all relevant times the recipients of Federal financial assistance, and that part of that financial assistance has been used to fund the operations, construction and/or maintenance of the specific public facilities described herein and the activities that take place therein.

96.     Plaintiff alleges that by subjecting Plaintiff to physical abuse, Plaintiff was unable to enjoy the benefits of education.  Plaintiff alleges that non-disabled children who attend AUSD are not subjected to similar acts of abuse and unconstitutional restraint.   Because of this, Sierra School, the facility in which Plaintiff was placed by reason of his disability, is not comparable to those used by non-disabled students.

97.     By its own acts or omissions in denying equal access to educational services, AUSD has violated the rights of Plaintiff under Section 504 and the regulations promulgated thereunder.

98.     As set forth in this Complaint, ANDREWS and MCBRIDE were deliberately indifferent to the risk that their actions would deprive Plaintiff of equal and meaningful access to education.

99.     ANELLO, DIAZ, RUBALCAVA and DOES 1 through 50, and other District

- 22 -

employees were deliberately indifferent to the abuse committed by ANDREWS and MCBRIDE. They had actual knowledge of the abuse and knew that ANDREWS and MCBRIDE were likely to continue abusing students similarly situated to Plaintiff but failed to act upon that knowledge.

100.    AUSD is vicariously liable for the actions or inactions of its employees under the well-established legal principal of *respondeat superior. Duvall v. County of Kitsup*, 260 F.3d 1124 (9th Cir. 2001), makes abundantly clear that, when a plaintiff brings a direct suit under the ADA or the Rehabilitation Act, a public entity is liable in *respondeat superior* for the acts of its employees.

101.    As a direct, proximate, and foreseeable result of AUSD's failure to comply with their duty under Section 504 and the regulations promulgated thereunder, Plaintiff has suffered damages, including special and general damages, the precise amount of which will be proven at trial.

102.    As a direct, proximate, and foreseeable result of Defendants' conduct, Plaintiff was forced to retain an attorney in order to protect his rights.  Accordingly, Plaintiff seeks reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under 29 U.S.C. section 794a(b).

### FOURTH CAUSE OF ACTION
**Count One: Negligence**
**(Against AUSD, ANDREWS, ANELLO, DIAZ, MCBRIDE,**
**MOORE, NOSANCHUK, RUBALCAVA and DOES 11 through 21)**

103.    Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

104.    Plaintiff alleges that Defendants owed Plaintiff a duty of care to adequately supervise Plaintiff and to place him in an appropriate educational placement that was safe and free from danger and abuse.

105.    Plaintiff further alleges that Defendants owed a duty to Plaintiff's parents to notify them of the assault perpetrated upon their child, K.H., pursuant their special relationship to these Defendants.

106.    Plaintiff further alleges that Defendants owed a duty to Plaintiff to anticipate the criminal acts of a third person, as such acts were reasonably foreseeable. Plaintiff alleges that the risk

AMENDED COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

of harm to Plaintiff was sufficiently high, and the burden on Defendants to protect against harm was sufficiently low, so as to impose upon Defendants a duty to protect Plaintiff.

107.    Defendants, and each of them, breached their duties to Plaintiff when they, inter alia:

(a) Failed to supervise students, including Plaintiff, at Sierra School;

(b) Provided ineffective supervision of students, including Plaintiff, at Sierra School;

(c) Failed to exercise ordinary care in supervising Sierra School students, including Plaintiff;

(d) Failed to make reasonable efforts to perform the duties imposed by Cal. Ed. Code section 44807, Cal. Ed. Code section 32260 through 32296 et seq., Cal. Ed. Code sections 48900.2-48900.4 and Cal. Code Regs, tit. 5, sections 5551 and 5552;

(e) Failed to take steps necessary to protect students at AUSD or warn the students, including Plaintiff and his parents;

(f) Negligently trained, supervised, managed and hired employees charged with the supervision of students, including Plaintiff;

(g) Violated the rights of Plaintiff set forth in Cal. Const. Art 1, section 28(c), Right to Safe Schools;

(h) Failed to properly investigate assaults on Plaintiff at Sierra School;

(i) Failed to discipline MCBRIDE and/or ANDREWS;

(j) Failed to implement and/or follow safety and security procedures and protocol;

(k) Failed to immediately report Plaintiff's assault to the proper authorities, thereby exposing Plaintiff to additional risk of injury and attendant damages;

(l) Failed to follow and enforce Individualized Education Plans, including those of Plaintiff;

(m)Delayed medical treatment to Plaintiff;

(n) Failed to notify Plaintiff's parents of the assault;

(o) Failed to warn Plaintiff of the risk of physical and psychological harm in at Sierra School.

AMENDED COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

(p) Failed to reassign Plaintiff to another school after being physically assaulted by staff at Sierra School even after AUSD was on notice of the inappropriate, unhealthy and unsafe environment that students, including Plaintiff were exposed to.

108.   Plaintiff alleges that Defendants' negligence was a substantial factor in causing his harm.

109.   Pursuant to Government Code section 815.6 AUSD may be liable with respect to the aforementioned mandatory duties because they were designed to protect against the very kind of injury that Plaintiff suffered as a result of Defendants conduct.

110.   The breaches of the foregoing duties by Defendants created a foreseeable risk of the particular type of harm which occurred to Plaintiff, such harm which was likely to occur in the absence of adequate safeguards or supervision. Thus, Defendants knew, or should have known, that Plaintiff was subject to an unreasonable risk of harm such that Defendants should have taken preventative measures. Further, Plaintiff alleges that negligence by employees of AUSD gives rise to vicarious liability pursuant to Cal. Govt. Code section 815.2 (a).

111.   Plaintiff alleges that AUSD is vicariously liable for the negligent conduct of its employees who were aware of the abuse of students, including Plaintiff, who failed to investigate the abuse of students, and failed to warn Plaintiff of the danger of remaining in the school and failed to remove Plaintiff from the school. Further, AUSD is vicariously liable for the negligent conduct of its employees who were aware of the abuse of students, including Plaintiff but failed to report the abuse in violation of their mandatory duty under Penal Code section 11165, *et seq*.

112.   As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

113.   As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

114.   Plaintiff alleges that the conduct of Defendants' ANDREWS, ANELLO, DIAZ,

MCBRIDE, MOORE, NOSANCHUK, RUBALCAVA, and DOES 11 through 21, conduct as described herein, was done with a conscious disregard of Plaintiff's right to safety in school, guaranteed by the California Constitution, such as to constitute oppression, fraud, or malice under Code of Civil Procedure section 3294,  and on information and belief, AUSD administrators knew, authorized, ratified, or perpetrated the oppression, fraud, or malice, entitling Plaintiff to punitive damages against all non-public entity Defendants.

**Count Two: Negligence**
**(Against CATAPULT, ANDREWS, ANELLO, DIAZ,**
**MCBRIDE, MOORE, NOSANCHUK, RUBALCAVA, and DOES**
**22 through 32)**

115.    Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

116.    At minimum, Defendants owed Plaintiff the duty of reasonable care. However, due to Plaintiff's status as a minor, Defendants owed a greater degree of care because, "children . . . lack capacity to appreciate risk and to avoid danger." *McDaniel v. Sunset Manor Co.* (1990) 220 Cal.App.3d 1, 7.

117.    Plaintiff alleges that Defendants owed him a duty of care to take all measures dictated by ordinary prudence to protect him from sources of injury.

118.    Plaintiff alleges that Defendants breached that duty when he was physically assaulted by ANDREWS and MCBRIDE while at Sierra School.

119.    Plaintiff alleges that at all times mentioned herein, Defendants ANDREWS, ANELLO, DIAZ, MCBRIDE, MOORE, NOSANCHUK, RUBALCAVA,  and DOES 22 through 32 were CATAPULT's agents, employees, representatives, and/or joint venturers. Additionally, that Defendants' ANDREWS, ANELLO, DIAZ, MCBRIDE, MOORE, RUBALCAVA, and DOES 22 through 32, harmful conduct was committed in the course of their employment and while engaged in a series of acts that were authorized by CATAPULT. Pursuant to the well-established legal principal of *respondeat superior*, CATAPULT is vicariously for the torts of their employees that are committed within the scope of their employment. *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962,

967.

120.   Plaintiff alleges he was harmed and that Defendants' breach of duty, including the negligent actions described herein, were a substantial factor in causing his harm.

121.   As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

122.   As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

123.   Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice. Alternatively, said Defendants' despicable conduct was carried out in conscious disregard of Plaintiff's rights. As a result, Plaintiff is entitled to punitive damages.

### FIFTH CAUSE OF ACTION
**Count One: Negligent Hiring, Supervision, or Retention of Employee**
**(Against Defendant AUSD)**

124.   Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

125.   At all relevant times, Defendant AUSD had a legal duty to protect and supervise the students of AUSD, including Plaintiff. In executing these duties, Defendant AUSD additionally owed a duty to exercise reasonable care in the hiring, supervision, training and retention of their employees. This duty includes ensuring that staff are competent in the performance of their duties. School administrators must ensure that policies and procedures are followed by school employees and that such employees have the requisite knowledge and training. *Virginia G. v. ABC Unified School District* (1993) 15 Cal.App.4th 1848, 1855.

126.   A school district may be directly liable for the negligence of its administrators and supervisors in hiring, supervising and retaining a school employee who abuses a student. *C.A. v.*

*William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 879.

127.    Plaintiff alleges that he was harmed by the conduct of ANDREWS, ANELLO, DIAZ, MCBRIDE, MOORE, NOSANCHUK, RUBALCAVA, and DOES 11 through 21, while enrolled as a student at Sierra School. Additionally, Plaintiff alleges that AUSD is responsible for this harm because ANELLO, DIAZ, MOORE, RUBALCAVA and DOES 11 through 21, negligently hired, supervised, trained and/or retained these and other Sierra School staff.

128.    Having a continuous duty to supervise staff members in order to ensure they are competently performing their duties, Defendant AUSD knew or should have known that that ANDREWS, ANELLO, DIAZ, MCBRIDE, MOORE, NOSANCHUK, RUBALCAVA, and DOES 11 through 21 were, or became, unfit or incompetent to perform the work for which they were hired, including unfit or incompetent to carry out the above-mentioned duties, as alleged herein, thereby posing a particular risk to students, including Plaintiff. Further Plaintiff alleges that AUSD knew, or should have known, that ANDREWS, ANELLO, DIAZ, MCBRIDE, MOORE, NOSANCHUK, RUBALCAVA, and DOES 11 through 21, posed a particular risk to students because they failed to immediately report the subject incident to the proper authorities, thereby exposing Plaintiff to additional risk of injury and attendant damages.

129.    Despite having a heightened duty, Defendant AUSD failed to exercise reasonable care in the hiring, supervision, and retention of their employees. Further, the negligent hiring, supervision and retention, was a substantial factor in causing the Plaintiff's harm. Specifically, Defendants breached the duties owed to Plaintiff when they, inter alia:

      (a) Failed to supervise teachers, aides, and staff in the performance of their duties;

      (b) Failed to ensure teachers, aides, and staff had the requisite knowledge and/or training to competently carry out their duties;

      (c) Failed to ensure that teachers, aides, and staff followed school policies aimed at the safety and protection of students;

      (d) Failed to ensure that teachers, aides, and staff followed Plaintiff's IEP;

      (e) Failed to properly investigate Plaintiff's assault at Sierra School; and

(f) Failed to ensure that incidents of abuse are properly reported.

130.    As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

131.    As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

132.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice. Alternatively, said Defendants' despicable conduct was carried out in conscious disregard of Plaintiff's rights. As a result, Plaintiff is entitled to punitive damages against all non-public entity Defendants.

### Count Two: Negligent Hiring, Supervision, or Retention of Employee
### (Against Defendant CATAPULT)

133.    Plaintiff incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

134.    Plaintiff alleges that he was harmed by Defendants ANDREWS, ANELLO, DIAZ, MCBRIDE, MOORE, NOSANCHUK, RUBALCAVA, and DOES 22 through 32, and that CATAPULT is responsible for that harm because CATAPULT negligently hired, supervised, and/or retained them.

135.    As set forth in this Complaint, Defendants ANDREWS, ANELLO, DIAZ, MCBRIDE, MOORE, NOSANCHUK, RUBALCAVA, and DOES 22 through 32, were and/or became unfit to perform the work for which they were hired when they betrayed their position of trust in committing an assault and denying Plaintiff free and equal access to a school-based education and that this behavior created an unreasonable risk of harm, particularly to a special education student like Plaintiff.

136.    Plaintiff alleges that CATAPULT knew or should have known that Defendants ANDREWS, ANELLO, DIAZ, MCBRIDE, MOORE, NOSANCHUK, RUBALCAVA, and DOES 22 through 32, were and/or became unfit to perform the work for which they were hired and that this unfitness, from their behavior, created an unreasonable risk of harm to students, including Plaintiff.

137.    Plaintiff alleges that Defendants' ANDREWS, ANELLO, DIAZ, MCBRIDE, MOORE, NOSANCHUK, RUBALCAVA, and DOES 22 through 32, unfitness harmed Plaintiff. Additionally, that Defendant CATAPULT's negligence in its hiring, retention, training or supervision of Defendants' ANDREWS, ANELLO, DIAZ, MCBRIDE, MOORE, NOSANCHUK, RUBALCAVA and DOES 22 through 32, was a substantial factor in causing Plaintiff's harm.

138.    Plaintiff further alleges that prior to the subject incident, CATAPULT knew or should have known of Defendants' ANDREWS, DIAZ, MCBRIDE, and DOES 22 through 32, unfitness for the job, including the unreasonable risk of harm that they posed to students, vis-à-vis its agents, employees, servants, representatives and/or joint venturers, and yet failed to take adequate steps to protect its students, including Plaintiff, from them.

139.    As a direct, proximate, and foreseeable result of Defendant CATAPULT's negligence, Plaintiff has suffered injuries, damages, and losses – including, without limitation, severe emotional distress, humiliation, economic loss, and other consequential damages.

140.    As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

141.    As a direct, proximate, and foreseeable result of Defendant unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

142.    Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice. Alternatively, said Defendants' despicable conduct was carried out

in conscious disregard of Plaintiff's rights. As a result, Plaintiff is entitled to punitive damages.

## SIXTH CAUSE OF ACTION
### Battery
### (Against Defendants CATAPULT, ANDREWS, MCBRIDE and
### DOES 1 through 10)

143.    Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

144.    As set forth in this Complaint, ANDREWS and MCBRIDE committed a battery against Plaintiff when they touched him with the intent to harm or offend.

145.    In California, a battery is a violation of an individual's interest in freedom from intentional, unlawful, harmful or offensive unconsented contacts with his or her person. *Rains v. Superior Court* (1984) 150 Cal.App.3d 933, 938. The willful and unlawful use of force upon another is also a criminal offense. California Penal Code section 242.

146.    Plaintiff alleges that he did not consent to the touching.

147.    Plaintiff alleges that he was harmed or offended by Defendants ANDREWS MCBRIDES' and conduct.

148.    Plaintiff further alleges that a reasonable person in Plaintiff's situation would be offended by the touching.

149.    Defendants CATAPULT, and DOES 1 through 10, are vicariously liable for the claims against its employees which occurred during the course and scope of their employment.

150.    As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

151.    As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at

trial.

152.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice. Alternatively, said Defendants' despicable conduct was carried out in conscious disregard of Plaintiff's rights. As a result, Plaintiff is entitled to punitive damages.

**SEVENTH CAUSE OF ACTION**
**Discrimination in Violation of the Unruh Civil Rights Act, Civil Code section 51**
**(Against AUSD, CATAPULT, and DOES 1 through 10)**

153.    Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

154.    Plaintiff alleges that Defendants violated the Unruh Civil Rights Act when they denied him full and equal access to advantages, facilities, privileges or services because of his disability.

155.    California enacted its first civil rights public accommodations statute in 1897. Although this public accommodation statute had always been broadly interpreted to include both public and private entities, a series of unpopular California court decisions in the 1950's began to limit its scope in an attempt to shield private business from liability.  One particularly unpopular decision, *Reed v. Hollywood Professional School*, 169 Cal.App.2d Supp. 887 (1959), exempted a private school from being covered by the public accommodations statute.  Significantly, the court in Reed distinguished private from public schools in concluding that the former were outside the scope of the public accommodations statue.  In response to the public objection to this and similar decisions, the California legislature revised the public accommodations statute in 1959. As amended, the new statute, known as the Unruh Civil Rights Act, broadened the scope of the public accommodations law and made the statute applicable to all business establishments, as opposed to public accommodations only.  The Unruh Act has been held applicable to both profit and non-profit entities.

156.    The Unruh Civil Rights Act, California Civil Code section 51 et seq., provides that all persons are free and equal, no matter their disability, and are entitled to full and equal access to services in all business establishments of every kind whatsoever. Additionally, Civil Code section

52(a) states that whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51 . . . is liable for each and every offense.

157.    The Unruh Civil Rights Act serves to "preserve a nondiscriminatory environment in California business establishments." *Flowers v. Prasad* (2015) 238 Cal.App.4th 930, 937. The scope of the Unruh Civil Rights Act has been broadly interpreted. The fact that the California Legislature used the words, "all" and "of every kind whatsoever" in referring to business establishments, is emblematic of an intent that the term "business establishments" be used in the broadest possible sense. *O'Connor v. Village Green Owners Assn.* (1983) 33 Cal.3d 790, 795.

158.    Plaintiff alleges on information and belief that the provision of educational services is a business as recognized by the United States Department of Labor. Specifically, the United States Department of Labor Statistics recognizes the educational services sector as part of the educational and health services super-sector.   The educational services sector consists of a single subsector, Educational Services: NAICS 611. The Educational Services sector comprises establishments that provide instruction and training in a wide variety of subjects.   This instruction and training is provided by specialized establishments, such as schools, colleges, universities, and training centers. These establishments may be privately owned and operated for profit or not for profit, or they may be publicly owned and operated.

159.    The Ninth Circuit has recognized that provision of educational services is not a function that is exclusively the prerogative of the state. *See Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 816 (9th Cir. 2010).  A school district generally resembles an ordinary for-profit business in that it has an annual budget based on the number of students served (or customers), has a tiered management hierarchy wherein all managers receive a salary, enters into contracts with third party vendors, and employs teachers who are members of unions that function identically to traditional labor unions. It therefore follows that a public-school district is a "business establishment" under the broad scope intended by the Unruh Act. Public school districts are thus considered "business establishments" within the meaning of the Unruh Civil Rights Act. *See Nicole M. v. Martinez Unified School District* (1997) 964 F.Supp.1369 (N.D. Cal. 1997); see also SACV 17-00069 JVS (KESx),

[2017 U.S. Dist. LEXIS 220241, at *13], K.T. v. Pittsburg Unified Sch. Dist. (N.D. Cal. 2016) 219 F. Supp. 3d 970, 983; E.F. v. Delano Joint Union High Sch. Dist. (E.D. Cal., Oct. 6, 2016, No. 116CV01166LJOJLT), [2016 WL 5846998, at *9], Walsh v. Tehachapi Unified Sch. Dist. (E.D. Cal. 2011) 827 F. Supp. 2d 1107, 1123, Y.G. v. Riverside Unified Sch. Dist. (C.D. Cal. 2011) 774 F. Supp. 2d 1055, 1065, Nicole M. v. Martinez USD (N.D. Cal. 1997) 964 F. Supp. 1369, Doe v. Petaluma City Sch. Dist. (N.D. Cal. 1993) 830 F. Supp. 1560, 1581-82; Sullivan v. Vallejo City USD (E.D. Cal. 1990) 731 F. Supp. 947, see also Davison v. Santa Barbara High Sch. Dist. (C.D. Cal. 1998) 48 F. Supp. 2d 1225, 1232-33 (concluding that a plaintiff's allegation that a public school failed to adequately respond to complaints of harassment gives rise to a cognizable claim under the Unruh Civil Rights Act). Plaintiff accordingly alleges that AUSD and CATAPULT are "business establishment" under the Act.

160. Defendants ANDREWS and MCBRIDE denied Plaintiff full and equal accommodations, advantages, facilities, privileges, and/or services. Additionally, Defendants discriminated against Plaintiff which resulted in a denial of full and equal accommodations, advantages, facilities, privileges, and/or services to him. On information and belief Plaintiff alleges he was restrained and ultimately battered based on disability and in response to behaviors related thereto.

161. Defendants CATAPULT, and DOES 1 through 10, are vicariously liable for the claims against its employees which occurred during the course and scope of their employment.

162. Because the Unruh Civil Rights Act creates a mandatory duty designed to protect Plaintiff from the discriminatory conduct that caused his harm, AUSD is liable pursuant to Government Code section 815.6.

163. Defendants CATAPULT and AUSD are also directly liable as they promulgated the policies and customs which direct resulted in the Plaintiff's restraint. Plaintiff alleges that similarly situated non-disabled students are not similarly restrained. On information and belief, Defendants AUSD and CATAPULT approved this arbitrary differential treatment.

164.    Plaintiff alleges that Defendants' conduct was a substantial factor in causing Plaintiff's harm.

165.    As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

166.    As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

167.    As a direct, proximate, and foreseeable result of Defendants' conduct, Plaintiff was forced to retain an attorney in order to protect his rights.  Accordingly, Plaintiff seeks reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under California Civil Code section 52.

**EIGHTH CAUSE OF ACTION**
**Discrimination in Violation of California Education Code Section 200 et seq.**
**(Against Defendants AUSD, CATAPULT, and DOES 1 through 10)**

168.    Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein. Section 220 of the Education Code provides: "[n]o person shall be subjected to discrimination on the basis of disability....in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid."

169.    A plaintiff may maintain an action for monetary damages against a school district when the plaintiff alleges that (1) he suffered severe and pervasive conduct that effectively deprived the plaintiff of the right of equal access to educational benefits and opportunities; (2) the school had actual knowledge of the conduct; and (3) the school responded with deliberate indifference.

170.    Plaintiff alleges that ANDREWS and MCBRIDE subjected him to physical abuse

which effectively deprived Plaintiff of the right to equal access to the educational benefits and opportunities. Plaintiff alleges that ANDREWS and MCBRIDE subjected Plaintiff to physical abuse by reason of status as a disabled student and in response to his disabilities.

171.    Plaintiff further alleges that Defendants AUSD, CATAPULT, and DOES 1 through 10, unreasonably denied him an alternative placement despite knowing that the fear and anxiety that Plaintiff suffered following his physical assault prevented him from attending school. Additionally, Defendants unlawfully conditioned his alternative placement on a full and complete release of his constitutional right to seek legal redress.  AUSD, CATAPULT, and DOES 1 through 10, therefore knew that Plaintiff needed services for his disability and deliberately and or maliciously conditioned the provision of those services on Plaintiff first agreeing to waive his legal rights to seek redress the discriminatory and constitutional behavior of Defendants' agents.  Such conduct in and of itself constitutes an extension of the of disability disclination Plaintiff experienced.  Plaintiff alleges that AUSD and CATAPULT, and DOES 1 through 10, had actual knowledge of the foregoing acts. Finally, and notwithstanding said knowledge, AUSD, CATAPULT, and DOES 1 through 10, responded with deliberate indifference, failing to take any corrective actions against any of the employees involved in the incident which amounts to ratification of the discriminatory conduct.

172.    Plaintiff further alleges that Plaintiff's parents informed AUSD, CATAPULT, and DOES 1through 10, that special needs children, including Plaintiff, had been abused and that Defendants were deliberately indifferent to the abuse when they took no action to discipline or prevent future abuse. Further Defendants denied Plaintiff's request for an alternative placement despite knowing that he suffered from significant fear and anxiety as a result of his physical assault because they withheld to use that fear and anxiety as leverage to obtain a release of liability for their prior invidious discrimination.

173.    Plaintiff alleges that California Education Code section 220 created a mandatory duty designed to protect Plaintiff from the kind of injury that he suffered. Accordingly, AUSD is liable pursuant to Government Code section 815.6. Plaintiff alleges that the local educational agency did not appropriately, and in a timely manner, apprise Plaintiff of his or her right to file a complaint with

the State Department of Education.

174.   As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

175.   As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

### NINTH CAUSE OF ACTION
**Violation of Mandatory Reporting Duty, California Penal Code section 11166**
**(Against All Defendants and DOES 1 through 50)**

176.   Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

177.   Government Code section 815.6 states there is government liability for failure to perform a mandatory duty "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Gov. Code section 815.6. Thus, the government may be liable when (1) a mandatory duty is imposed by enactment, (2) the duty was designed to protect against the kind of injury allegedly suffered, and (3) breach of the duty proximately caused injury."

178.   Under California Penal Code section 11166, "mandatory reporters" are required to report, immediately or as soon as practicably possible, any known or suspected child abuse or neglect. Mandatory reporters include, but are not limited to, teachers, instructional aides, and administrative officers. Penal Code section 11165.7. Accordingly, the employees of AUSD, CATAPULT, and DOES 1 through 10, were at all relevant times herein, obligated to report known or suspected abuse, such as the physical assault perpetrated against Plaintiff by ANDREWS and MCBRIDE.

179. Specifically, Plaintiff alleges that ANDREWS, ANELLO, DIAZ, MCBRIDE, MOORE, NOSANCHUK, RUBALCAVA, and DOES 11 through 43, were teachers, instructional aides, classified personal and/or administrative officers of AUSD, CATAPULT, and DOES 1 through10, who each had a mandatory duty to report his physical assault. Penal Code section 11166.

180. Plaintiff alleges that Defendants and DOES 1 through 50, knew that he was the victim of abuse as defined by Penal Code sections 11165.3 and 11165.4, and that they nonetheless failed to comply with their mandatory duties, by reporting the abuse to any of the agencies specified in Penal Code section 11165.9, or otherwise report the information known to them as required by Penal Code section 11166.

181. It is the declared purpose of California's mandatory reporting statutes, to protect minors, including Plaintiff, from abuse. At all relevant times, Plaintiff was a member of the class of persons for whom California's mandatory reporting statutes were designed and enacted to protect. Further, the injuries that Plaintiff suffered as a result of being physically assaulted by two grown men, are the type of injuries that the mandatory reporting statutes were designed and enacted to prevent.

182. Plaintiff alleges that he was harmed by Defendants' conduct, including but not limited to the delay in his medical treatment.

183. Further, Plaintiff alleges that Defendants' failure to perform their mandatory reporting duties was a substantial factor in causing his harm.

184. As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

185. As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

### TENTH CAUSE OF ACTION
#### Discrimination in Violation of Bane Act, Civil Code Section 52.1
#### (Against Defendants AUSD, CATAPULT, ANDREWS and MCBRIDE)

186.    Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

187.    Civil Code section 52.1 protects against interference with the rights of an individual that are secured by the Constitution or laws of the United States or the rights secured by the laws of the state of California by threat, intimidation, or coercion.

188.    Plaintiff has a fundamental right to a school-based under the California Constitution. Specifically, California has assumed a statewide responsibility for a public education system open on equal terms to all. *Butt v. California* (1992) 4 Cal.4th 668, 680. Under California Constitution, Article I, section 7(a) and Article IV, section 16(a), a public-school system may not deny some students the basic educational necessities provided to other students. Further, under the Fourth Amendment of the United States Constitution, all public-school students have the right under the Fourth Amendment to be free from unreasonable searches and seizures. The unreasonable use of excessive force and corporal punishment of a student violates this right. *Doe ex rel. Doe v. Hawaii Dept. of Education* (9th Cir. 2003) 334 F.3d 906, 909. Accordingly, Plaintiff has liberty interests in bodily integrity and the right to be free from potentially dangerous harassment or abuse, which causes Plaintiff to fear school to the extent that he is unable to attend and is therefore deprived of his right to a school-based education.

189.    Plaintiff alleges that ANDREWS and MCBRIDE acted violently against Plaintiff because of and response to behaviors that were a manifestation of his disability and prevented him from exercising his rights, including preventing his access to a school-based education. Additionally, AUSD and CATAPULT ratified these violent acts and further prevented Plaintiff from exercising his right to a school-based education when failed to provide a safe learning environment, failed to investigate known abuse, and failed to make ensure that Plaintiff could return to an environment free from harassment or abuse.

190.    As a result, Plaintiff was harmed. Additionally, Defendants conduct was a substantial

factor in causing his harm.

191.    As set forth in this Complaint, that AUSD and CATAPULT are vicariously liable for the conduct of ANDREWS and MCBRIDE.

192.    Further, AUSD is liable because it was under a mandatory duty not to interfere with Plaintiff's right to a school-based education by means of threat, intimidation, or coercion. Further, this duty was designed to protect Plaintiff from the type of injuries he suffered as a result of a breach of this duty.

193.    As a direct, proximate, and foreseeable result of Defendants unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

194.    As a direct, proximate, and foreseeable result of Defendants unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

195.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice. Alternatively, said Defendants' despicable conduct was carried out in conscious disregard of Plaintiff's rights. As a result, Plaintiff is entitled to punitive damages against all non-public entity Defendants.

196.    As a direct, proximate, and foreseeable result of Defendant's conduct, Plaintiff was forced to retain an attorney in order to protect his rights.  Accordingly, Plaintiff seeks reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under California Civil Code section 52.

///

///

AMENDED COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

### ELEVENTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**
**(Against All Non-Public Entity Defendants and DOES 1 through 50)**

197.   Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

198.   Plaintiff alleges that ANDREWS and MCBRIDE intentionally used improper use of restraint and force, including verbal and physical abuse, against Plaintiff.

199.   Instead of calmly assessing the situation and acting in moderation, ANDREWS and MCBRIDE essentially attacked Plaintiff in the school hallway without warning. MCBRIDE initiated the attack in that he grabbed plaintiff by the shirt without provocation and began dragging him down the hallway. Defendant ANDREWS then joined in and abruptly grabbed Plaintiff by the wrist and forcibly twisted Plaintiff's arm behind his back, causing Plaintiff to suffer unnecessary and unreasonable pain.  MCBRIDE followed suite by grabbing Plaintiff's other wrist and forcing behind Plaintiff's back causing further pain. ANDREWS then grabbed Plaintiff by the back of the neck and the pair began to march Plaintiff down the hallway.

200.   When Plaintiff indicated to defendants that he was in pain and pleaded with ANDREWS to let go of his neck, ANDREWS mocked his request and laughed at him. ANDREWS' mocking response demonstrates that he intended to cause Plaintiff emotional distress with his actions and that MCBRIDE was aware of and recklessly disregarded the probability that their actions were causing Plaintiff emotional distress.

201.   Once back in the classroom, Defendants ANDREWS and MCBRIDE continued the battery by slamming plaintiff to the ground, causing his head to crash into a desk and then smack into the floor. The pair then held Plaintiff in an unauthorized and potentially deadly restraint which caused Plaintiff  extreme discomfort and embarrassment.

202.   Plaintiff sustained serious injuries, including a Concussion, as result of the assault and battery perpetrated by ANDREWS and MCBRIDE.  There is no reasonable excuse for the misconduct which a reasonable juror could easily conclude was extreme and outrageous.

203.   Plaintiff alleges that the supervisory Defendants' conduct was also extreme and outrageous, in that after learning about the improper use of restraint and force ANDREWS and MCBRIDE, Defendants covered for them, downplayed what occurred to parents, and failed to discipline the perpetrators of the abuse. Plaintiff further alleges that Defendants failed to take any corrective measures following the initial assault thereby preventing Plaintiff access to immediate medical treatment following the assault. Defendants further engaged in deliberate actions to deprive Plaintiff access to a school-based education and to prevent Plaintiff from exercising his constitutional rights. As a whole and individually, Defendants' conduct was outrageous in that it was so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Hughes v. Pair* (2009) 46 Cal. 4th 1035, 1050-1051.

204.   Plaintiff alleges that Defendants intended to cause Plaintiff emotional distress or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress.

205.   Plaintiff alleges that Plaintiff suffered severe emotional distress.

206.   As set forth in this complaint, Defendants conduct was a substantial factor in causing Plaintiff's harm.

207.   Plaintiff alleges that CATAPULT is vicariously liable for the torts of its employees that are committed within the scope of employment. *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967.

208.   As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

209.   As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

210.   Defendants committed the acts alleged herein maliciously, fraudulently, and

oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice. Alternatively, Defendants' despicable conduct was carried out in conscious disregard of Plaintiff's rights. As a result, Plaintiff is entitled to punitive damages against all non-public entity Defendants.

## TWELFTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (Against All Non-Public Entity Defendants and DOES 1 through 50)

211.    Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

212.    As set forth in this Complaint, Defendants' conduct was negligent in that it breached the duty of care and caused Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress.

213.    Plaintiff alleges that he was harmed and that Defendants' negligent conduct was a substantial factor in causing his harm.

214.    Plaintiff alleges that AUSD is vicariously liable for the acts, and negligence, of its employees under California Government Code section 815.2.

215.    Plaintiff alleges that CATAPULT is vicariously liable for the torts of its employees that are committed within the scope of employment. *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967.

216.    As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has suffered severe humiliation, mental anguish, and emotional and physical distress, embarrassment, anger, loss of enjoyment of life, and has been injured in mind and body, the precise amount of which will be proven at trial.

217.    As a direct, proximate, and foreseeable result of Defendants' unlawful conduct, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

218.    Defendants committed the acts alleged herein maliciously, fraudulently, and

- 43 -

oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice. Alternatively, said Defendants' despicable conduct was carried out in conscious disregard of Plaintiff's rights. As a result, Plaintiff is entitled to punitive damages against all non-public entity Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants and DOES 1 through 50, and each of them, on all theories of action as follows:

1.      For general damages within the jurisdiction of the Court according to proof;

2.      For all special damages, including but not limited to medical and incidental expenses according to proof, property damage and loss of use;

3.      For punitive damages against non-public entity Defendants, as permitted by law;

4.      For costs of suit herein;

5.      For attorneys' fees, as permitted by law;

6.      For prejudgment interest as permitted by law; and

7.      For such other and further relief as the Court deems proper.

Dated:  April 9, 2019

/s/ Micha Star Liberty

By: _____

Micha Star Liberty (SBN 215687)
Leah Simmet (SBN 320096)
**LIBERTY LAW**
1970 Broadway, Suite 700
Oakland, CA 94612
Telephone: (510) 645-1000
Facsimile: (888) 645-2008
E-mail: team@libertylaw.com

*Attorneys for Plaintiff*

AMENDED COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

1

## DEMAND FOR JURY TRIAL

2

Plaintiff respectfully demands a trial by jury as to all matters so triable.

3

4

Dated:  April 9, 2019

5

/s/ Micha Star Liberty

6
By: _____

Micha Star Liberty (SBN 215687)

7
Leah Simmet (SBN 320096)

**LIBERTY LAW**

8
1970 Broadway, Suite 700

Oakland, CA 94612

9
Telephone: (510) 645-1000

Facsimile: (888) 645-2008

10
E-mail: team@libertylaw.com

11
*Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL