IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

K.H., a minor, by and through his *Guardian ad Litem* MARTARICE HUMPHREY,

Plaintiff,

v.

ANTIOCH UNIFIED SCHOOL DISTRICT, a public entity; CATAPULT LEARNING WEST, LLC, a limited liability company dba Sierra School of Antioch; SAMUEL MCBRIDE, an individual; JONIQUE ANDREWS, an individual; STEVE NOSANCHUK, an individual; BRUNO DIAZ, an individual; CORY MOORE, an individual; RUTH RUBALCAVA, an individual; STEPHANIE ANELLO, an individual; and DOES 1 through 50, inclusive,

Defendants.

No. C 18-07716 WHA

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**

**INTRODUCTION**

In this civil rights action, defendants move to dismiss parts of the amended complaint. To the extent set forth below, defendants' motions are **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

The following facts, assumed to be true for purposes of the present motion, are taken from the amended complaint (Dkt. No. 36). Plaintiff K.H. is a fourteen-year-old student with special needs enrolled in the special education program at Antioch Unified School District

("AUSD"). The federal government provides approximately ten percent of AUSD's funding. AUSD placed plaintiff in Sierra School, a private school specialized in providing special education, operated by defendant Catapult Learning West, LLC ("Catapult"). Catapult is an independent for-profit limited liability company that specializes in special education. AUSD and Catapult jointly run Sierra School. Employees from both AUSD and Catapult make up the staff at Sierra School. Defendant Bruno Diaz is the Director of Sierra School. Defendant Cory Moore is the Administrator of Sierra School. Defendant Ruth Rubalcava is the Director of Special Education for AUSD (*id.* ¶¶ 1–3, 5, 10–12, 26–27). At oral argument, all parties conceded that AUSD, on its own, evaluated plaintiff, decided to place him in a special-education program, and selected Sierra School.

In December 2017, plaintiff requested and received permission from his teacher, defendant Steve Nosanchuk, to remove himself from the classroom to use calming techniques which were part of plaintiff's behavior-intervention training. Defendant Samuel McBride, a teacher aide at Sierra School, then saw plaintiff outside the classroom, roughly grabbed him by the shirt, and pulled him toward the classroom. McBride asked defendant Jonique Andrews, another employee at Sierra School, to assist. Andrews grabbed plaintiff by the wrist, forcibly placed his hands behind his back, and held him by the back of his neck. McBride forcibly held plaintiff's other hand behind his back as McBride and Andrews escorted plaintiff back to class. When plaintiff asked Andrews to let go of his neck, Andrews coldly laughed in response (*id.* ¶¶ 28–32, 36).

Once back in the classroom and after McBride and Andrews had released their holds, plaintiff said something to the effect of "let go of me" or "get off me." In response, McBride and Andrews "slammed" plaintiff to the floor causing his head to crash into a desk before hitting the floor. McBride and Andrews then placed plaintiff into a "two-person pro-act prone restraint," which the United States Department of Education recommends not be used under any circumstance. McBride and Andrews immobilized all four of plaintiff's limbs. Plaintiff left the incident with a gash under his eye, a split lip, and bleeding gums (*id.* at 9 n.1, ¶¶ 33–34).

Defendants did not offer medical attention, call plaintiff's parents, or report the incident to the authorities. When plaintiff's father picked plaintiff up from school a few hours later, he noticed the injury on plaintiff's face. Plaintiff's father asked Nosanchuk what had happened and why he hadn't been informed. Nosanchuk informed plaintiff's father that the incident had "just happened." Plaintiff's parents filed a request for assistance with AUSD. Plaintiff's parents filed a second request for assistance after receiving no response to the first request. Defendant Stephanie Anello, the Superintendent of AUSD, informed plaintiff's mother that no response had been given because plaintiff's mother failed to complete the proper form. Plaintiff's mother then submitted the correct form. (*id.* ¶¶ 34, 36, 46, 48).

The day after the incident plaintiff was diagnosed with a concussion. Because plaintiff experienced fear and anxiety related to the incident, and thus felt unsafe to return to school, plaintiff's parents requested that AUSD provide an alternative placement and to allow for independent study in the meantime. AUSD concluded that Sierra School was an appropriate placement and denied both requests (*id.* ¶¶ 40, 43–45).

In February 2018, after consulting a law firm, AUSD concluded that no assault had occurred. AUSD informed plaintiff's parents that no additional protection would be provided to plaintiff. McBride and Andrews were still employed at Sierra School. Accordingly, plaintiff's parents kept plaintiff from returning to school because they feared for his safety. Plaintiff requested that AUSD move plaintiff to a different school and offered three options. AUSD denied all three requests, stating that plaintiff was not a good fit for the other schools. Defendants sent plaintiff a "Compromise and Release Agreement" that offered to grant the alternative placement in exchange for release from all liability (*id.* ¶¶ 49–50, 52, 54–55).

Plaintiff's complaint alleges the following twelve claims: (1) violation of Section 1983; (2) discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. § 12132; (3) discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794; (4) negligence; (5) negligent hiring, supervision, or retention of employee; (6) battery; (7) discrimination in violation of the Unruh Civil Rights Act, California Civil Code Section 51; (8) discrimination in violation of California Education Code Section 220; (9) violation of

3

mandatory reporting duty pursuant to California Penal Code Section 11166; (10) discrimination in violation of the Tom Bane Civil Rights Act, California Civil Code Section 52.1; (11) intentional infliction of emotional distress; and (12) negligent infliction of emotional distress. This order follows full briefing and oral argument.

**ANALYSIS**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations in the complaint are to be accepted as true and construed in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Conclusory allegations or "formulaic recitation of the elements" of a claim, however, are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681.

**1. SECTION 1983 CLAIM.**

Plaintiff's first claim is brought against Catapult, McBride, Andrews, Diaz, Moore, Rubalcava, and Anello under Section 1983 (Dkt. No. 36 ¶ 60). Section 1983 provides a "mechanism for vindicating federal statutory or constitutional rights." *Stillwell v. City of Williams*, 831 F.3d 1234, 1240 (9th Cir. 2016) (citation omitted). To state a Section 1983 claim, a plaintiff must show "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). The constitutional right at issue is the Fourth Amendment right to be free from unreasonable seizure (Dkt. Nos. 36 ¶ 61; 42 at 5–6; 53 at 7). Catapult, McBride, Andrews, Diaz, Moore, Rubalcava, and Anello move to dismiss (Dkt. Nos. 42 at 5–11; 43 at 4–11).

Our court of appeals has established that a student's "Fourth Amendment right to be free from an unreasonable seizure extends to seizures by or at the direction of school officials."

*Doe ex rel. v. Haw. Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003) (internal quotation marks omitted). "A seizure violates the Fourth Amendment if it is objectively unreasonable under the circumstances." *Ibid.* In a school setting, "the reasonableness of the seizure must be considered in light of the educational objectives" the official is trying to achieve. *Ibid.* Plaintiff alleges that McBride and Andrews violated his Fourth Amendment right to be free from unreasonable seizure by holding him by the wrist, forcing his arm behind his back, grabbing his neck, slamming him to the floor (which caused his head to hit a desk) and improperly implementing the "two-person pro-act prone" restraint (Dkt. No. 36 ¶¶ 31, 33–34, 61–62). Taking the facts as true and construing them in a light most favorable to plaintiff, this order holds that plaintiff has plausibly alleged unreasonable seizure in violation of his Fourth Amendment rights.

Defendants next argue that plaintiff's claim fails because Catapult is a private company; thus, defendants were not acting under color of state law (Dkt. No. 43 at 6–7). Plaintiff alleges that because AUSD hired Catapult to remain compliant with federal regulations — and "[t]he acts complained of were contemplated by this contract" — the relationship is sufficient to establish that Catapult and its employees acted under color of state law (Dkt. No. 36 ¶¶ 5–6, 72). In opposition, plaintiff argues that by signing this contract, which allowed for AUSD and Catapult employees to be within the same facility, AUSD "so far insinuated itself into a position of interdependence with [Catapult] that . . . [it] must be considered a state actor for purposes of [Section] 1983" (Dkt. No. 52 at 9). Plaintiff further alleges that AUSD and Catapult "jointly controlled, directed, managed, operated, and/or owned Sierra School" (*ibid.*).

"The inquiry is whether the State was sufficiently involved in causing the harm to the plaintiff to treat the conduct of the private actor as 'under color of state law.'" *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 506 (9th Cir. 1989). "When addressing whether a private party acted under color of [state] law, we . . . start with the presumption that private conduct does not constitute governmental action" without "something more." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). Our court of appeals has recognized a four-part test "to identify what constitutes that 'something more': (1) public function; (2) joint action; (3) governmental compulsion or

5

coercion; and (4) governmental nexus." *Sutton*, 192 F.3d at 835–36; *see also Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). Satisfaction of any of these tests is sufficient. *Kirtley*, 326 F.3d at 1092.

In a recent decision, the Supreme Court has indicated that "a private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 ( 2019) (internal citations omitted). This order finds the test from our court of appeals consistent with the Supreme Court's description of the state action rule.

The Supreme Court has held that the state action rule requires a necessarily fact-heavy inquiry. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982); *Brentwood Acad. v. Tenn. Secondary Sch. Ass'n*, 531 U.S. 288, 298 (2001). Here, the key point is that the specific facts and circumstances are not fully known to the plaintiff because they involve the internal workings of AUSD and the nature of the contract. Plaintiff cannot be expected to plead facts that he cannot possibly access and can only be learned through discovery. For the reasons set forth below, plaintiff has plausibly alleged that employees at Sierra School were acting under color of state law by reason of the contractual relationship between Catapult and AUSD.

"The public function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental." *Kirtley*, 326 F.3d at 1093 (internal quotation marks omitted); *see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). Education has long been available through both public and private avenues. Because it cannot be said that education is traditionally and *exclusively* governmental, this factor does not, by itself, support a finding that Catapult and the Sierra School employees were acting under color of state law.

"Under the joint action test, we consider whether the [S]tate has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." *Kirtley,* 326 F.3d at 1093 (internal quotation marks omitted). "In other words, if the [S]tate knowingly accepts the benefits derived from

unconstitutional behavior . . . then the conduct can be treated as state action." *Gorenc*, 869 F.2d at 507 (internal quotation marks omitted). Plaintiff alleges that "Sierra School staff are comprised of both District and [Catapult] employees and is housed within AUSD facilities" (Dkt. No. 36 ¶ 5). At oral argument, plaintiff's counsel indicated that it was unclear who McBride and Andrews worked for, because employees from both AUSD and Catapult worked at Sierra School. At the pleading stage, the mixed nature of the school is sufficient to support a plausible inference of joint action.

"The compulsion test considers whether the coercive influence or significant encouragement of the [S]tate effectively converts a private action into a government action." *Kirtley,* 326 F.3d at 1094 (internal quotation marks omitted). In other words, the State can be held responsible "when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Plaintiff alleges that AUSD and Catapult "controlled, directed, managed, operated and/or owned Sierra School," and that actions by McBride and Andrews were taken in the scope of employment with AUSD and Catapult (Dkt. No. 36 ¶¶ 6–8). If true, these allegations are sufficient to support the plausible inference that the State coerced or encouraged the acts at issue. Anything more would be impossible for the plaintiff to plead, because he does not yet have access to the contract between Catapult and AUSD. The interworkings of AUSD's involvement in the school obtained through discovery will tease out whether the employees at Sierra School, specifically McBride and Andrews, were acting under color of state law in the course of the events at issue.

The government nexus test, which is by far the most loosely-defined test, "asks whether there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Kirtley,* 326 F.3d at 1094–95 (internal quotation marks omitted). On the one hand, the Supreme Court has held that "[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell–Baker v. Kohn*, 457 U.S. 830, 841 (1982). On the other hand, because of the necessarily fact-bound inquiry, it is impossible to

make a finding here without knowing what the contract between AUSD and Catapult entails. Among other nexus considerations, this order finds the allegation that "[t]he acts complained of were contemplated by this contract" sufficient to establish a nexus between government action and the incident at issue (Dkt. No. 36 ¶ 72).

Catapult cites *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806 (9th Cir. 2010), where our court of appeals found that a private, non-profit corporation running a charter school was not a state actor for employment purposes (Dkt. No. 43 at 8). Catapult also cites *Rendell–Baker v. Kohn*, 457 U.S. 830, 841–42 (1982), to argue that the provision of educational services is not "a function that is traditionally and exclusively the prerogative of the [S]tate . . ." (Dkt. No. 43 at 8). As the *Caviness* decision indicates, however, "[i]t is important to identify the function at issue because an entity may be a [s]tate actor for some purposes but not for others." *Caviness*, 590 F.3d at 812–13. Both decisions addressed the charter school's role as an employer, not a provider of a secure educational environment. *Rendell–Baker*, 457 U.S. at 836; *Caviness*, 590 F.3d at 813. As such, the facts of those two decisions do not apply here.

Additionally, in *Caviness*, the plaintiff's argument failed because he pled that all Arizona charter schools were state actors as a matter of law under Arizona's statutory scheme. *Caviness*, 590 F.3d at 813. Here, in contrast, plaintiff alleges that the contract between Catapult and AUSD to provide educational services indicates that AUSD, through the State, sufficiently established a position of interdependence with Catapult and the Sierra School employees (Dkt. No. 36 ¶ 6). This is the type of fact-specific inquiry that requires more than what plaintiff can possibly plead absent discovery. Because plaintiff has alleged as much as would be possible prior to discovery, this order finds that the complaint leads to a plausible inference that McBride and Andrews acted under color of state law through the government nexus, compulsion, and joint action tests. Accordingly, the motion to dismiss this claim against McBride and Andrews is **DENIED**.

Plaintiff alleges that Catapult, Diaz, Moore, Rubalcava, and Anello are individually liable under Section 1983 for their inaction in the training, supervision, and control of McBride

8

and Andrews (Dkt. No. 36 ¶ 65). Catapult, Diaz, Moore, Rubalcava, and Anello move to dismiss, reasoning that they did not personally participate or take an "affirmative part" in the actions of Andrews and McBride (Dkt. Nos. 42 at 5–11; 43 at 7–10). Section 1983 does not provide for liability under *respondeat superior*. *Iqbal*, 556 U.S. at 676. A plaintiff may only hold "supervisors individually liable in [Section] 1983 suits when culpable action, or inaction, is directly attributed to them." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). Because plaintiff fails to allege that these defendants played a personal role in the acts at issue, this claim against these defendants cannot survive a motion to dismiss.

In opposition, plaintiff argues Anello and Rubalcava are individually liable under Section 1983 because they "knew of past violations of the rights of other students committed by these individuals and failed to act to prevent them" (Dkt. No. 53 at 7). Plaintiff further argues that Catapult, Diaz, and Moore are liable for their failure to adequately train their employees which resulted in the use of excessive force (Dkt. No. 52 at 11–12). Our court of appeals has found that a supervisor can be held liable in a Section 1983 action "by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207–08 (internal citations, quotation marks, and brackets omitted). Plaintiff alleges that Diaz, Moore, Rubalcava, and Anello had "actual or constructive knowledge" of previous incidents of abuse, and that Catapult has a "permanent and well-settled practice of downplaying the abuse of special education students" (Dkt. No. 36 ¶¶ 67, 71–72). These allegations are a mere formulaic recitation of the elements, which the Supreme Court has indicated is insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 681.

It is possible that facts and circumstances will come to light that show that some or all of these defendants should be held responsible. However, because the present record does not show that these defendants personally participated in the acts at issue, and because Section 1983 does not provide for liability under *respondeat superior*, the motion to dismiss this claim against Catapult, Diaz, Moore, Rubalcava, and Anello is **GRANTED**.

9

In their motions to dismiss, Catapult, Rubalcava, and Anello raise immunity defenses (Dkt. Nos. 42 at 9; 43 at 8–9). Because this order dismisses the Section 1983 claim against these defendants, the immunity issues need not be addressed at this time.

**2. ADA AND REHABILITATION ACT CLAIMS.**

Plaintiff asserts AUSD violated his rights under the ADA and Section 504 of the Rehabilitation Act (Dkt. No. 36 ¶¶ 82–86, 97). AUSD moves to dismiss these claims (Dkt. No. 42 at 11–14). In *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), our court of appeals stated:

> To prove that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

That decision also held that "[a] plaintiff bringing suit under § 504 must show (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Ibid.* The parties do not dispute that plaintiff is a "qualified individual with a disability" under both statutes (Dkt. No. 36 ¶ 83). "To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall*, 260 F.3d at 1138. Intentional discrimination can be met by showing "deliberate indifference." *Ibid.* Deliberate indifference requires "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Id.* at 1139.

Plaintiff's theory for relief against AUSD under these statutes is two-fold. *First*, plaintiff asserts that AUSD violated the ADA and Section 504 when it failed to provide an adequate alternative placement other than Sierra School. *Second*, plaintiff posits that AUSD is vicariously liable for the actions of McBride and Andrews.

The Individuals with Disabilities Education Act ("IDEA") provides federal funds for States that provide a free appropriate public education ("FAPE") "to all children with disabilities

10

residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." 20 U.S.C. § 1412(a)(1)(A). Plaintiffs seeking relief under the ADA, the Rehabilitation Act, "or other Federal laws protecting the rights of children with disabilities" must first exhaust administrative remedies available under the IDEA. 20 U.S.C. § 1415(l). To be subject to the exhaustion requirement, a plaintiff must be seeking relief for the denial of a FAPE. *Fry v. Napoleon Cmty. Schs.*, 137 S.Ct. 743, 752 (2017). To determine whether a plaintiff seeks relief for such a denial, "a court should look to the substance, or gravamen, of the plaintiff's complaint." *Ibid.* Here, if plaintiff seeks relief for AUSD's failure to provide him with meaningful access to education, plaintiff must first exhaust the remedies available to him under the IDEA.

*First*, plaintiff alleges that AUSD discriminated against him and denied him equal access to educational benefits by "subject[ing] him to physical abuse causing him to fear returning to school" and subsequently denying him a reasonable alterative placement (Dkt. No. 36 ¶ 84). This order finds that the decision to place plaintiff in another school is without doubt educational in nature. The gravamen of plaintiff's complaint is that AUSD failed to provide him with a FAPE when AUSD denied him adequate alternative placement. Therefore, the ADA and Section 504 claims against AUSD for failure to find adequate alternative placement are barred for failure to allege exhaustion of remedies available under the IDEA.

*Second*, plaintiff argues that AUSD is liable for the wrongful acts of McBride and Andrews. AUSD moves to dismiss this claim because AUSD did not participate in the alleged violation and that it did not act with deliberate indifference (Dkt. No. 42 at 12–13). AUSD does not address plaintiff's *respondeat superior* argument. The ADA and Section 504 specifically provide for relief under the doctrine of *respondeat superior*. *Duvall*, 260 F.3d at 1141. "When a plaintiff brings a direct suit under either the Rehabilitation Act or . . . the ADA . . . the public entity is liable for the vicarious acts of its employees." *Ibid.* Therefore, the appropriate inquiry is whether the actions of McBride and Andrews were educational in nature and thus subject to IDEA exhaustion. If not, then the claim against AUSD under the doctrine of *respondeat*

11

*superior* may survive so long as plaintiff plausibly alleged that the actions of McBride and Andrews violated the ADA and Section 504.

Plaintiff alleges that Andrews coldly laughed at plaintiff when he asked Andrews to let go of his neck and that Andrews and McBride used excessive force by implementing the "two-person pro-act prone restraint" (Dkt. No. 36 ¶¶ 32–33). Plaintiff further alleges that McBride and Andrews responded in this manner because plaintiff exhibited symptoms related to his disability (Dkt. No. 36 ¶ 87). This order finds these allegations sufficient to support an inference that McBride and Andrews, with deliberate indifference, deprived plaintiff of his right to be free from unreasonable seizure. Therefore, with respect to the injuries resulting from the restraint, plaintiff has plausibly alleged a violation of the ADA and Section 504.

The injuries resulting from the restraint are not educational in nature and thus not subject to IDEA exhaustion. In *Fry*, the Supreme Court laid out a two-part hypothetical to determine whether or not the complaint concerns the denial of a FAPE. *Fry*, 137 S.Ct. at 756. The first inquiry is whether the plaintiff could "have brought essentially the same claim if the alleged conduct had occurred at a public facility . . . ." *Ibid.* The second is whether "an *adult* at the school—say, an employee or visitor—[could] have pressed essentially the same grievance . . . ." *Ibid.* In a footnote, the Supreme Court indicated that when "a teacher, acting out of animus or frustration, strikes a student with a disability, who then sues the school under a statute other than the IDEA," that suit would likely not be subject to IDEA exhaustion. *Ibid.* n.9. The reasoning is that a child in that situation could file a claim under the ADA or Section 504 against an official if it occurred at another public facility. Furthermore, an adult in that same situation at a school could file a claim under the ADA or Section 504 against the school. *Ibid.*

Plaintiff's allegations against McBride and Andrews are similar to the situation that the Supreme Court addressed in that footnote. The alleged overreaction by McBride and Andrews is plausibly outside the realm of education. This order recognizes that there is a mix of opinion in other district courts regarding whether or not the use of restraints is educational in nature. For example, in *N.S. by and Through his Parent (J.S.) v. Tennessee Department of Education*, No. 3:16-cv-0610, 2017 WL 1347753, at *11 (M.D. Tenn. Apr. 12, 2017) (Judge Aleta A.

12

Trauger), a district court in Tennessee indicated that "[t]he discipline of students is primarily educational in nature." But in *P.G. by and Through R.G. v. Rutherford County Board of Education*, 313 F. Supp. 3d 891, 900, 902 (M.D. Tenn. 2018) (Judge Waverly D. Crenshaw, Jr.), the same court held that the use of restraints was particular to the school environment but that a teacher's striking of a student was outside the realm of education and not subject to IDEA exhaustion. Here, the ultimate determination will turn on the specific facts and circumstances of the situation revealed after discovery.

Because plaintiff has plausibly alleged that McBride and Andrews violated the ADA and Section 504, AUSD would be held vicariously liable for their actions. The motion to dismiss plaintiff's ADA and Section 504 claims against AUSD under a theory of *respondeat superior* is **DENIED**.

### 3. STATE-LAW CLAIMS.

The state-law claims will be **HELD IN ABEYANCE** pending a determination of whether any of the federal claims survive summary judgment. By **SEPTEMBER 26, 2019**, defendants shall file summary-judgment motions setting forth their factual versions of the case and whatever factual discovery defendants obtain from plaintiff and elsewhere. Plaintiff's counsel may take discovery reasonably necessary to meet the issues raised in the motion. Within forty-nine days after the motion for summary judgment is filed, plaintiff must file his opposition. The reply shall be due one week later. The hearing will be **DECEMBER 5, 2019**.

In the Court's experience, cases of this nature can be best managed by getting at the actual facts contended by the two competing sides under oath, as opposed to unsworn allegations, complaints, and responses by the plaintiff. If the federal claims are dismissed on summary judgment, then it is unlikely the Court will exercise supplemental jurisdiction over the state law claims. If any of the federal claims survive, however, the Court may retain some or all of the state law claims pursuant to supplemental jurisdiction. The briefing to date has asked the judge to make many rulings on issues of state law regarding matters of first impression. It is unwise to do this on a motion to dismiss based on mere allegations as opposed to the actual facts

of the case. Therefore, this order, which is already far too long, will not delve further into the state-law claims at this time.

## CONCLUSION

Defendants' motions to dismiss are **GRANTED IN PART AND DENIED IN PART**. As to the dismissed claims, plaintiff may move for leave to file an amended complaint by **JULY 22 AT NOON**. Any such motion should include as an exhibit a redlined version of the proposed amended complaint that clearly identifies all changes from the initial complaint. In the proposed amended complaint, plaintiff should be sure to plead his best case. If such a motion is made, it will not slow up the summary-judgment plan set forth above. Both sides are expected to cooperate in discovery to help get to the truth of the matter.

**IT IS SO ORDERED.**

Dated: July 1, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE