UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.H., a minor, by and through his Guardian ad Litem MARTARICE HUMPHREY,<br><br>    Plaintiff,<br><br>    v.<br><br>ANTIOCH UNIFIED SCHOOL DISTRICT, a public entity; CATAPULT LEARNING WEST, LLC, a limited liability company dba Sierra School of Antioch; SAMUEL MCBRIDE, an individual; JONIQUE ANDREWS, an individual; BRUNO DIAZ, an individual; CORY MOORE, an individual; RUTH RUBALCAVA, an individual; STEPHANIE ANELLO, an individual; and DOES 1 through 50, inclusive,<br><br>    Defendants. | No. C 18-07716 WHA<br><br>**ORDER GRANTING ANTIOCH UNIFIED SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT AND CERTIFYING ISSUE UNDER 28 U.S.C. § 1292(b)** |

**INTRODUCTION**

In this action for the mistreatment of a student under the Americans with Disabilities and Rehabilitation Acts, the defendant school district moves for summary judgment. Because a school district is not liable for the wrongdoing of its contractors or employees absent advance notice to a person of authority, the motion is **GRANTED**.

**STATEMENT**

Prior orders set out the facts of this case (Dkt. No. 58). In brief, plaintiff is a child with a learning disability. AUSD placed him in a special education program at the Sierra School,

operated by defendant Catapult Learning West, LLC.  On December 12, 2017, plaintiff left his classroom, with teacher permission.  Finding plaintiff out of class, teacher aides Jonique Andrews and Samuel McBride allegedly grabbed plaintiff and dragged him back into the classroom.  In forcing the 14-year-old back into his seat they held his hands behind his back, held him by the back of his neck, slammed him into the floor (hitting his head on a desk in the process), and placed him in a two-person pro-act prone restraint, or so it is alleged.  Plaintiff left with a gash under his eye, a split lip, and bleeding gums (Dkt. Nos. 58 at 1–2, 74 at 3).  The school district now faces civil claims under the ADA and Section 504 of the Rehabilitation Act.

**ANALYSIS**

Assuming without concluding that Andrews and McBride acted as alleged, the school district raises the issue whether it can be held liable under a theory of *respondeat superior* in absence of notice to a person of authority, an issue of first impression under the ADA and Section 504.  No binding precedent squarely addresses this point and the two relevant lines of precedent are two ships passing in the night — they diverge, seemingly without knowledge of each other.  Reconciling these lines of authority, however, requires holding that *respondeat superior* under the ADA and Section 504 remains viable but only after prior notice to a person of authority.

Our court of appeals first applied *respondeat superior* to a Section 504 claim in *Bonner v. Lewis*, 857 F.2d 559 (9th Cir. 1988).  It reasoned that because Department of Justice enforcement of the Rehabilitation Act targeted the entity, not the wrongful employee, the Act contemplated *respondeat superior* liability.  It also explained that *Monell v. New York Department of Social Services*, which bars *respondeat superior* for Section 1983 claims, stood as an exception to the general rule that "*respondeat superior* applies" to civil rights actions.  Our court of appeals held "[t]he application of respondeat superior to § 504 suits would be entirely consistent with the policy of that statute, which is to eliminate discrimination against the [disabled.]" *Id.* at 566–67.

In *Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001), our court of appeals extended this holding to the ADA.  "When a plaintiff brings a direct suit under either the

Rehabilitation Act or Title II of the ADA against a municipality (including a county), the public entity is liable for the vicarious acts of its employees." And, as recently as 2019 in *United States v. Town of Colorado City*, our court of appeals has reaffirmed both *Bonner* and *Duvall*:

> *Monell's* holding remains the exception to the general rule. We have declined to bar *respondeat superior* in other contexts. In *Bonner*, for example, we held that *respondeat superior* liability applies to claims pursuant to § 504 of the Rehabilitation Act of 1973 because the application of *respondeat superior* is entirely consistent with the policy of that statute, which is to eliminate discrimination against the handicapped. And, in *Duval v. County of Kitsap*, we held that *respondeat superior* liability applies to claims brought pursuant to Title II of the Americans with Disabilities Act.

935 F.3d 804, 808–09 (9th Cir. 2019) (citations and quotations omitted).

But a parallel line of cases appears to undercut the application of simple *respondeat superior* to ADA and Section 504 claims. The line began under Title IX of the Education Amendments of 1972. In *Gebser v. Lago Vista Independent School District*, the Supreme Court "conclude[d] that it would frustrate the purpose of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of *respondeat superior* or constructive notice, *i.e.*, without actual notice to a school district official." The Supreme Court reached this conclusion after explaining that "[Title IX] was modeled after Title VI of the Civil Rights Act of 1964." 524 U.S. 274, 285–86 (1998) (quotation marks omitted).

Later in 1998, our court of appeals then applied *Gebser* in *Ferguson v. City of Phoenix*, holding "compensatory damages are not available under Title II [of the ADA] or § 504 absent a showing of discriminatory intent" and explaining that "the remedies for violations of the ADA and the Rehabilitation Act are coextensive with each other and are linked to Title VI of the Civil Rights Act of 1964." *See* 157 F.3d 668, 673–74 (9th Cir. 1998) (citations omitted). The clear implication was that if Title IX limits *respondeat superior*, so must Title VI, and so must the ADA and Section 504. In *Lovell v. Chandler*, our court of appeals came close to so holding: "The Supreme Court has said that the purpose of requiring proof of intent as a prerequisite for the recovery of monetary damages from a public entity is to ensure that the *entity had knowledge and notice*." 303 F.3d 1039, 1057 (9th Cir. 2002).

3

Neither of these more recent circuit cases involved *respondeat superior*. In *Ferguson*, "the City's liability ar[ose] from its own acts and official policies." 157 F.3d at 677 (Tashima, J., dissenting). And in *Lovell*, state policy supported direct liability. 303 F.3d at 1057. So, though appearing to incorporate *Gebser*, neither case involved *respondeat superior* or was squarely on point. It remains curious that our court of appeals in *Colorado City* discussed, and explicitly reaffirmed, *Bonner* and *Duvall* without addressing *Gebser*, *Ferguson*, or *Lovell*. But, upon review of the briefing and oral argument in that appeal, it seems counsel therein didn't inform the panel that another ship was passing in the night.[*]

Taking in the broader legal landscape, the Court of Appeals for the First Circuit, in surveying other circuits, recently stated "[w]hether the rationale of *Gebser* should be extended to insulate public entities from liability under Title II of the ADA on a theory of respondeat superior is an open question." *Gray v. Cummings*, 917 F.3d 1, 17 (1st Cir. 2019).

In one final attempt to resolve this open question, plaintiff appeals to *Castle v. Eurofresh* where our court of appeals held that public entities "may not contract away their obligation to comply with federal discrimination laws." 731 F.3d 901, 910 (9th Cir. 2013). This holding only overcomes the fact that Andrews and McBride were employed by a contractor, Sierra School, and not the school directly. *Respondeat superior* may not differentiate between contractors and employees under the ADA and Section 504, but the question remains whether advance notice to a person of authority is required.

This order now holds that *respondeat superior* still applies in the ADA and Section 504 contexts but only if the district had advance notice of the problem. This seems to be the best, most harmonious reconciliation of both lines of cases.

Despite ample opportunity for discovery, plaintiff presents no evidence that AUSD had notice of the harm, or risk of harm, to plaintiff. Rather, following the primary dispute addressed above, plaintiff's opposition merely details Andrews and McBride's deliberate indifference

---

[*] The lone "*see also Gebser*" cite (in the city's reply) only contrasted Titles IX (of the Education Amendments) and VII (of the Civil Rights Act) and did not apprehend *Ferguson* or *Lovell*'s incorporation of *Gebser* into the ADA or Section 504.

4

(Dkt. No. 106 at 15–16). But it remains uncontested that Andrews and McBride held no authority at the Sierra School. *Their actions, without notice to someone of authority at AUSD, cannot support respondeat superior liability against AUSD.* Thus, plaintiff's ADA and Section 504 claims against AUSD are foreclosed as a matter of law.

## CONCLUSION

Because plaintiff fails to provide evidence of notice to AUSD, required to impose *respondeat superior* liability under the ADA and Section 504, its motion for summary judgment is **GRANTED**. But, because this order decides a controlling question of law and there is substantial ground for difference of opinion between two diverging lines of precedent, this order is **CERTIFIED FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b).** Plaintiff's state law claims against AUSD remain and, as noted at the December 19 hearing, the parties have until February 21 to file motions for summary judgment on those claims.

**IT IS SO ORDERED.**

Dated: January 21, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE