UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

K.H., a minor, by and through his Guardian ad Litem MARTARICE HUMPHREY,

    Plaintiff,

v.

ANTIOCH UNIFIED SCHOOL DISTRICT, et al.,

    Defendants.

No. C 18-07716 WHA

**ORDER APPROVING SETTLEMENT OF MINOR'S CLAIMS**

**INTRODUCTION**

In this suit for the mistreatment of a disabled minor, the parties move for approval of a proposed settlement. Because the child's net recovery is adequate, settlement approval is **GRANTED**. Counsel's request for fees and costs is **GRANTED IN PART**.

**STATEMENT**

Prior orders recite the facts herein (Dkt. No. 58, 145). In brief, fourteen-year-old plaintiff K.H. has a learning disability. Antioch Unified School District ("AUSD") placed him at the Sierra School, a private special education school operated by a subsidiary of defendant Catapult Learning, Inc. On December 12, 2017, plaintiff grew agitated, so he requested and received permission to leave the classroom and use calming techniques, part of his behavior-intervention training. Finding him out of class, teacher aides Samuel McBride and Jonique Andrews allegedly grabbed plaintiff, forced his hands behind his back, and led him toward the classroom with their

1  hands on back of his neck.  When plaintiff asked Andrews to let go of his neck, Andrews laughed.
2  Upon entering the classroom, plaintiff said something to the effect of "let go of me" or "get off
3  me."  In response, McBride and Andrews allegedly "slammed" the fourteen year old to the floor
4  (crashing his head into a desk on the way down) and immobilized him with a "two-person pro-act
5  prone restraint," which the United States Department of Education says should *never* be used on
6  children.  Plaintiff left the incident with a gash under his eye, a split lip, and bleeding gums
7  (Compl., Dkt. No. 36, at ¶¶ 28–32, 33–34, 36, fn. 1).
8      Plaintiff asserts various negligence, tort, and both federal and California civil rights claims
9  against both AUSD and Catapult.  Following several rounds of amendment, a January 21 order
10 granted summary judgment to the school district on plaintiff's remaining federal claims, whose
11 motion on state claims remains.  And both federal and state claims continue against Catapult,
12 whose motion on federal claims also pends.  After these numerous motions and court
13 appearances, the parties resumed settlement discussions and agreed to a $450,000 payment, paid
14 solely by Catapult.  Accounting for attorney's fees and costs, the proposal provides plaintiff a net
15 recovery of $218,839.09 (Hansen Decl. ¶ 4).

**ANALYSIS**

**1.   REVIEW OF PLAINTIFF'S NET RECOVERY.**

Settlement of a minor's claims requires court approval.  A district court must "determine whether the settlement serves the best interests of the minor."  The primary question is "whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases."  *Robidoux v. Rosengren*, 638 F.3d 1177, 1181–82 (9th Cir. 2011).  The proposed settlement offers plaintiff a net recovery of $218,839.09.  Balancing the severity of the allegations and the prospect for recovery at trial, this amount is adequate.

Here, minor plaintiff was allegedly assaulted by the very people entrusted to keep him safe — school staff.  The violent incident left him bloodied on the floor.  He suffered a traumatic brain injury, a concussion, when his head allegedly bashed into a desk.  The emotional injury remains significant.  Plaintiff now suffers from PTSD and Major Depressive Disorder with Anxious

Distress. He also fears returning to school. His expert estimates future therapy costs at $244,150 (Hansen Decl. ¶ 6). This would warrant considerable recovery.

On the other hand, plaintiff's recovery at trial remains uncertain. Defendants would, before a jury, likely dispute allegations of abuse and discrimination, as well as the extent of K.H.'s emotional injury. Additionally, though federal and state claims live against Catapult, only state claims remain against AUSD, after a January 21 order found the school district could not be liable for the wrongdoing of its employees, or contractors, without advance notice under the Americans With Disabilities and Rehabilitation Acts (Dkt. No. 145). And, AUSD's own investigations, aided by outside counsel, found no mistreatment of plaintiff at the Sierra School (Dkt. No. 74 at 15). Thus, there remains a substantial risk that plaintiff may recover nothing at trial.

The proposed net recovery of $218,839.09 can help alleviate plaintiff's physical and emotional injuries. It can cover costly therapy, medical needs, and perhaps placement at a different school. It could also cover an undergraduate education. This recovery marks a substantial step toward making plaintiff whole.

Finally, the proposed net recovery compares fairly to similar claims by children mistreated at schools in neighboring districts. In *Hugunin v. Rocklin City School District*, a special needs teacher physically abused students and the court approved minors' net recoveries of $202,677, $329,731, and $280,279. No. C 15-00939 MCE, Dkt. Nos. 160, 161, 162 (E.D. Cal. Mar. 23, 2018). And in *Rabinovitz v. City of Los Angeles*, police pulled a 14-year-old out of class for questioning, leaving her crying and shaken. 287 F. Supp. 3d 933 at 941–43 (C.D. Cal. 2018). The court approved a $130,000 net payment to the child. No. C 16-8087-DMG, 2018 WL 1912861 (April 13, 2018).

Plaintiff suffered physical and emotional trauma, and actual recovery can address his current and expected needs. The proposed settlement agreement can make him whole through therapy, school transfer, or further education. Last, given the risk of no recovery at trial, and comparable recovery in similar cases, this order finds the proposed net recovery of $218,839.09 fair and reasonable.

### 2. REVIEW OF ATTORNEY'S FEES.

Plaintiff's counsel seeks $180,000 in attorney's fees, per a 40% contingent-fee agreement, and $51,160.91 in costs. Counsel rates both requests as reasonable, but also asserts such evaluation lies beyond this Court's jurisdiction (Dkt. No. 163 at 8–9, 11–12). Counsel gets partial credit. California directs a comprehensive evaluation of attorney's fees and costs here, but, upon review, they are largely reasonable.

#### A. CALIFORNIA EVALUATION OF FEES AND COSTS.

Counsel asserts review of attorney's fees lies beyond this order's reach and relies on *Robidoux v. Rosengren*, where our court of appeals said a district court's "special duty to safeguard the interests of minor plaintiffs . . . requires only that the district court determine whether the *net amount* distributed to each minor plaintiff in the proposed settlement is fair and reasonable." 638 F.3d at 1179. This logic proves a bridge too far. Counsel's reading embraces a contingency arrangement setting aside 99% of a recovery for attorney's fees, so long as the absolute *dollar value* of the minor's 1% rates as adequate. Such a sweetheart deal for counsel would shock the conscience.

Regardless, *Robidoux* does not apply here. To start, it involved federal and state claims asserted on behalf of both minors *and adults* — the sole party here is the minor. Moreover, though the *Robidoux* plaintiffs raised both federal and state claims, our court of appeals expressly limited its holding to federal claims — it did "not express a view on the proper approach for a federal court to use when . . . approving the settlement of a minor's state law claims." *Id.* at 1179, fn. 2. After all, state law still governs state claims heard in federal court, whether exercising diversity or supplemental jurisdiction. *See United Mine Workers Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Karen Kane Inc. v. Reliance Ins. Co.*, 202 F.3d 1180, 1183 (9th Cir. 2000). Because plaintiff asserts several California claims, *California* governs the probe of attorney's fees and costs.

Unsurprisingly, California directs a comprehensive evaluation of attorney's fees and costs distributed from a minor's settlement. The Fourth District Court of Appeal has explained:

> Although attorneys are ethically prohibited from charging an unreasonable or unconscionable fee, courts normally do not inquire

4

> into reasonableness in the absence of an objection by the client. An exception exists, however, where the lawyer represents a minor or incompetent person and recovers funds by way of a judgment or settlement. In such cases, the court *must approve* the payment of reasonable costs and fees.

*Ojeda v. Sharp Cabrillo Hosp.*, 8 Cal. App. 4th 1, 17 (1992) (citations omitted) (emphasis added). The same court later recognized that the underlying statute, California Probate Code § 3601:

> [B]estows broad power on the court to authorize payment from the settlement — to say who and what will be paid from the minor's money — as well as direct certain individuals to pay it. The plain language of the statute permits the court to make an order authorizing 'such reasonable expenses' as it 'shall approve and allow' to be paid from the settlement proceeds going to the minor. Because . . . costs and attorney's fees are expressly included within the scope of the order, and these charges are generated by . . . lawyers and other providers who are not parties to the action, we construe the statute as empowering the court to determine reasonable expenses to be paid to [them].

*Goldberg v. Sup. Ct.*, 23 Cal. App. 4th 1378, 1382 (1994) (citation omitted).

But what force does counsel's contingent-fee agreement impart? California says little. Rule of Court 7.955 dictates that when approving a minor's settlement, "*unless the court has approved the fee agreement in advance*, the court must use a reasonable fee standard when approving and allowing the amount of attorney's fees . . . ." True, "[t]he court must give consideration to the terms of any representation agreement . . . based on the facts and circumstances existing at the time the agreement was made." But Rule 7.955 only "*permits*, [and] does not require, the court to allow attorney's fees in an amount specified in a contingency fee agreement. The amount of attorney's fees allowed by the court must meet the reasonableness standard of [Probate Code] section 3601 no matter how [it is] determined." Factors to consider include "[t]he amount of the fee in proportion to the value of the services performed . . . . [t]he novelty and difficulty of the questions involved and the skill required . . . [t]he amount involved and the results obtained . . . [t]he time limitations or constraints imposed . . . [t]he experience, reputation, and ability of the attorney or attorneys performing the legal services . . . [and] [t]he informed consent of the representative of the minor or person with a disability to the fee . . . ." And, if the fee is contingent, the court should consider the

5

attorney's risk of loss, costs advanced, and delay in payment. *Gonzalez v. Chen*, 197 Cal. App. 4th 881, 885-887 (2011) (citing CAL. R. CT. 7.955) (emphasis added).

In sum, California "emphasize[s] the important role a trial court plays in awarding attorney's fees in a minor's compromise [where] the minor's guardian ad litem, often a relative, is rarely skilled in the law and usually depends on the minor's attorney for advice" and "may not even question the argument" for greater fees. In these cases, a court "must develop and resolve any counterarguments on behalf of the minor, lest the attorney receive an excessive award of fees." *Id.* at 887.

### B.  THE REQUESTED FEES AND COSTS ARE REASONABLE.

Counsel's fee request of 40% of the gross settlement amount ($180,000) rates as a substantial part of plaintiff's recovery. The proposed agreement was not pre-approved, so review is warranted. Though this order agreed above that $218,839.09 could adequately remedy plaintiff, shortfalls remain. Aside from counsel's word, the record contains *no* independent testimony or opinion that the settlement fractions set aside for plaintiff, counsel, and expenses compare favorably to similar cases. Nor has plaintiff's guardian *ad litem* submitted a declaration supporting the arrangement. Thus, the undersigned was inclined to award 33% of the recovery in attorney's fees. Upon due consideration, however, counsel's considerable effort — and Catapult's obstinate defense — warrant an increase.

*First*, counsel's fee pales compared to the services performed. *See* CAL. R. CT. 7.955(b)(2). Counsel expended more than thirteen hundred billable hours on this case, yielding (with reasonable attorney rates) a lodestar of over $650,000. Over the two years of this case, counsel's records indicate it took no fewer than nine depositions and defended three. Counsel also proceeded through several rounds of amended complaints, opposed two partial summary judgment motions, and prepared to oppose a third (Dkt. Nos. 74, 78, 149).

Counsel's billing records remind us of a sobering reality — protection of the most vulnerable among us remains, all too often, not the economic choice. Counsel admirably billed $650,000 to win plaintiff a gross recovery of $450,000. Frankly, counsel would have been within its right to decline this engagement — representation of the vulnerable is paramount, but lawyers

6

must make a living for such representation to continue. This warrants an increase over the usual 33%.

*Second*, this case presented unique hurdles. *See* CAL. R. CT. 7.955(b)(3). To start, Catapult's byzantine corporate structure — and obstinate defense — continually muddied the waters, making it difficult to determine whom to sue. Even the Court spent considerable effort wading through the issue (Dkt. No. 117). This name game has only, it seems, been recently resolved (Dkt. No. 134), and frankly need never have occurred. And the case presented substantive challenges. The pleading motions carried several state law matters of first impression (Dkt. No. 58 at 13). Moreover, the Court *sua sponte* certified its summary judgment order, holding AUSD insulated from plain *respondeat superior* liability, for interlocutory review given the two contrary lines of precedent (Dkt. No. 145). Again, this factor counsels an increased fee.

*Third*, counsel's risk of loss in this case was substantial. *See* CAL. R. CT. 7.955(b)(12)–(13). A suit for the mistreatment of a minor carries a real possibility of loss. Again, counsel conducted substantial discovery for this case, both to determine the facts and to figure out whom to sue. And, following several pleading motions, counsel responded to several motions for summary judgment over the two years of this case. Counsel expended all this time and effort at the risk of no reward. This again warrants an increase.

Thus, in light of the above, rather than the standard 33%, counsel is entitled to the requested 40% fee taken from plaintiff's settlement. But counsel is not entitled to double dip and recover a further percentage of its reimbursed costs — the fee will be calculated from plaintiff's settlement amount, *net of costs*.

Counsel requests reimbursement of $51,160.91 in costs, primarily fees for depositions and experts, retained to quantify plaintiff's physical, mental, and educational harm. As above, counsel took at least nine depositions and defended three, incurring substantial recording fees. Counsel also paid filing and printing fees, along with its legal research bill. Last, counsel economically paid for parking and public transportation to hearings, and notably did not include other travel costs. Counsel's costs substantiated and reasonable, reimbursement is warranted.

From the $450,000 settlement payment, less $51,160.91 in costs, plaintiff's *net* recovery

becomes $398,839.09. Attorney's fees, 40%, come to $159,535.64. And, plaintiff's remainder increases to $239,303.45.

## CONCLUSION

For the reasons stated above, approval of the settlement agreement is **GRANTED**. Counsel's request for fees and costs is **GRANTED IN PART**. The parties shall file a stipulated dismissal pursuant to Rule 41(a)(1)(A)(ii), by **MAY 7 AT NOON**.

Catapult's payment of **$239,303.45** shall be deposited into a custodial account for the minor plaintiff and delivered in accordance with California Probate Code § 3611(f). The custodial account shall be opened at a federally insured bank. Plaintiff's father, Martarice Humphrey, is **APPOINTED** custodian of the account and may expend the custodial property as he deems advisable *for the sole use and benefit of K.H.* Under California Probate Code § 3914(a), a court order is not required for the withdrawal of these funds.

Plaintiff's counsel shall receive **$159,535.64** in attorney's fees and **$51,160.91** in reimbursement of expenses. Half of the fees and expenses shall be paid immediately. The remainder shall be paid when counsel certifies that all funds have been *properly* distributed and the file can be completely closed.

**IT IS SO ORDERED.**

Dated: April 25, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE